**Yuanliang LIU, Petitioner,**

v.

**U.S. DEPARTMENT OF JUSTICE, Attorney General Alberto Gonzales,\* Respondents.**

**Docket No. 05–0031–AG.**

United States Court of Appeals, Second Circuit.

Submitted: Jan. 30, 2006.

Decided: July 11, 2006.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R.

Gonzales is automatically substituted for for-

mer Attorney General John Ashcroft as the respondent in this case.

after petitioner first came to the United States, an immigration judge ("IJ") denied Liu's claims on adverse credibility grounds. The IJ also concluded that petitioner's application was frivolous under Section 208(d) of the INA, 8 U.S.C. § 1158(d). Both of these determinations were affirmed, without opinion, by the Board of Immigration Appeals ("BIA"). Petitioner subsequently sought our review of the BIA's decision.

Before us, petitioner challenges the IJ's credibility decision and her finding of frivolousness. We conclude that substantial evidence supports the credibility ruling against Liu. We remand the finding of frivolousness, however, to give the BIA an opportunity, in the first instance, to formulate standards for deciding when an asylum seeker's application may be deemed frivolous.

Khagendra Gharti–Chhetry, Chhetry & Associates P.C., New York, N.Y., for Petitioner.

James S. Carroll III, Assistant United States Attorney, for Anthony J. Jenkins, United States Attorney for the Virgin Islands, St. Thomas, V.I., for Respondents.

Before CALABRESI, WESLEY, and HALL, Circuit Judges.

CALABRESI, Circuit Judge.

In August 2002, petitioner Yuanliang Liu (hereinafter "petitioner" or "Liu"), a native and citizen of the People's Republic of China, applied for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231, and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85. In January 2004, two years

## BACKGROUND

After living his entire life in the Fujian province of China, petitioner, then 35–years old, fled his native country for the United States and arrived in Los Angeles in January 2002. He left behind two children—a son born in September 1989 and a daughter born in May 1991—and his wife of twelve years. In August of 2002, petitioner submitted an I–589 application ("original application") in which he explained that he feared persecution because he and his wife were practitioners of Falun Gong. In this original application, Liu asserted that although China's family planning policy made it "stressful" for him and his wife to have a second child after the birth of their son, they managed to do so, and his wife gave birth to their daughter in 1991.

Nearly a year after petitioner completed his first written application, Liu filed an amended I–589 application ("amended application"). In it, petitioner claimed that

his wife was forced to wear an intrauterine device ("IUD") after the birth of their first child. According to the amended statement, the IUD was "lost automatically" at some point, and, by August 1990, petitioner's wife was pregnant for a second time. Liu reported that his wife's pregnancy was eventually detected by family planning officials who made her abort her pregnancy on April 21, 1991. The revised application also said that, shortly after the coerced abortion, petitioner's older sister discovered an abandoned infant girl, whom Liu and his wife decided to adopt and raise as their own.

At a full merits hearing, petitioner adhered to the narrative he had presented in his amended application rather than the one that he gave in his original application. Thus, Liu testified that his wife was required to implant an IUD once their son was born; after petitioner's wife lost her IUD, became pregnant, and missed several required IUD checkups, she was forced to have an abortion. Liu reiterated that he and his wife had adopted an abandoned baby that his sister had found a few weeks after his wife's abortion. Petitioner also added that family planning officials learned of the unauthorized adoption in December 1996, and, as a result, imposed a 14,000 RMB fine. Liu was able to pay off 5,000 RMB in October 1998, but never settled the remainder of the penalty.

In addition, petitioner recounted that, starting in June 1998, his wife found refuge from the emotional pressures following the forced abortion and the undisclosed adoption by practicing Falun Gong. Once the Chinese government outlawed the practice of Falun Gong in July 1999, however, Liu and his wife were both instructed to attend reeducation courses. Petitioner speculated that he was associated with his wife's activities because members of Falun Gong had practiced at his home. After he

and his wife had each failed to attend these mandatory sessions, police officers confiscated books and videotapes relating to Falun Gong from their home (at a time when neither of them were home). Liu testified further that he and his wife separately went into hiding after they learned of these events. Subsequently, while petitioner's wife remained in China (at a different home than the one they shared), Liu crossed into Thailand in August 2001, and paid his way to America.

During cross-examination, the government asked Liu to address (a) the seemingly significant omissions in his original application, i.e., his wife's IUD and coerced abortion, and the purported adoption of their second child, all of which were mentioned for the first time in Liu's amended application and at his asylum hearing; (b) the formal references in his household registration booklet to the daughter he had supposedly adopted without authorization; and (c) the fact that a letter from his wife was not mailed from the town in which she had purportedly relocated.

At the end of the hearing on January 22, 2004, the IJ issued her ruling, denying petitioner's asylum claims on adverse credibility grounds and deeming his application frivolous. On December 10, 2004, the BIA affirmed the IJ's decision without opinion.

## DISCUSSION

On appeal to us, petitioner disputes both the validity of the credibility ruling against him and the IJ's finding that his asylum application was frivolous. The case therefore presents two separate questions for review: (1) whether substantial evidence supports the IJ's adverse credibility ruling, and (2) whether the IJ correctly decided that petitioner's asylum application was frivolous. The first of these is not uncommon among immigration appeals, and, based on our full review of the record, we

**110**

find that "the evidence so overwhelmingly supports the IJ's [adverse credibility] finding that, notwithstanding identified errors, there is no realistic possibility of a different result on remand." *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 395 (2d Cir.2005); *see also Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 161–62 (2d Cir.2006). The second question raises issues with which we deal far less frequently and on which the BIA has, thus far, provided no substantial guidance. Under the circumstances, we conclude that it is appropriate to remand the IJ's finding of frivolousness so that the BIA may, in the first instance, develop clear standards for how these determinations should be made and evaluated. We discuss each of these two questions in turn.

### I. Adverse Credibility

In cases where the BIA summarily affirms an IJ's decision without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), we review the reasoning and decision of the IJ directly, treating it as the final agency determination. *See Ming Xia Chen v. BIA,* 435 F.3d 141, 144 (2d Cir.2006). We owe "particular deference" to an IJ's credibility finding, "mindful that the law must entrust some official with responsibility to hear an applicant's asylum claim, and the IJ has the unique advantage among all officials involved in the process of having heard directly from the applicant." *Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 (2d Cir.2004). Hence, our review of an IJ's credibility assessment is an "exceedingly narrow inquiry to ensure that the IJ's conclusions were not reached arbitrarily or capriciously ... [and] that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Id.* at 74 (internal citations and quotation marks omitted).

We may, however, vacate and remand an adverse credibility determination if we find that the IJ has failed to "act fairly in judging credibility and in assessing the sufficiency of the evidence," *Cao He Lin,* 428 F.3d at 394, *e.g.,* where the IJ based the credibility ruling "upon speculation or upon an incorrect analysis of the testimony," *id.* at 400, or where the IJ unduly relied on inconsistencies that are "relatively minor and isolated and do not concern material facts," *Diallo v. INS,* 232 F.3d 279, 288 (2d Cir.2000) (citation omitted). Notwithstanding these types of errors, we may still affirm a credibility finding if we can confidently predict that "there is no realistic possibility that, absent the errors, the IJ or BIA would have reached a different conclusion." *Cao He Lin,* 428 F.3d at 401.

In the case before us, the IJ presented numerous grounds for her conclusion that petitioner was not credible. A number of these reasons are unavailing, and, as a consequence, do not provide support for the IJ's credibility ruling. For example, the IJ's doubts about two aspects of petitioner's testimony—(1) that Liu's wife would not have taken greater precautions to keep her second pregnancy hidden from local authorities, and (2) that the Chinese government would countenance petitioner's failure to pay the full amount of his fine—rested on speculation. *See Zhou Yun Zhang,* 386 F.3d at 74. In addition, with respect to one of the IJ's other concerns *(i.e.,* where Liu's wife stayed while in hiding), the IJ erred in failing "actively [to] appraise the explanations that an applicant, in order to rectify discrepancies in his testimony, gave." *Ming Shi Xue v. BIA,* 439 F.3d 111, 123 (2d Cir.2006) (citation omitted). Finally, the putative inconsistency in petitioner's testimony about re-education classes was not supported by the record, nor did the IJ or the government

bring this concern to Liu's attention during the hearing; as a result, petitioner was deprived of an opportunity to clarify this minor (and arguably nonexistent) discrepancy, which was first mentioned by the IJ in her decision. *See Ming Shi Xue,* 439 F.3d at 114–15; *cf. Xian Tuan Ye v. Dep't of Homeland Security,* 446 F.3d 289, 295 (2d Cir.2006) (per curiam).

■ These missteps cannot be easily ignored. The IJ, however, also gave several valid grounds for doubting Liu's credibility, two of which are especially significant. First, the IJ found it "important to note" that Liu's daughter—who was purportedly adopted without official authorization after being found abandoned in their village— was registered in the household registration booklet and had an official birth certificate. When confronted with this, Liu claimed that the documents, though legitimate, were provided as a favor to petitioner's elder brother. As the IJ explained, Liu's reply, understandably, did not allay the IJ's credibility concerns. On the contrary, petitioner's testimony as to the circumstances surrounding the procurement of his supporting documents served to cast doubt on their authenticity.

Second, the IJ emphasized that Liu's original I–589 application, submitted with the aid of counsel in August 2002, stated that his wife gave birth to their second child. In his amended application, filed just a year later, petitioner claimed, as he did during his asylum hearing, that family planning officials forced his wife to abort her second pregnancy, and that afterwards he and his wife illegally adopted a child who had been abandoned in their village. When asked about the differences between the earlier and later applications, petitioner answered that he had not mentioned his wife's coerced abortion or the unauthorized

adoption of their daughter because he did not realize that China's family planning practices were a potential basis for asylum.

This might explain why petitioner did not emphasize and elaborate on his wife's abortion and their undisclosed adoption. It does not address, however, why petitioner suggested in his original application that his wife gave birth to their second child, rather than simply reporting (without emphasis or elaboration) that they had adopted their daughter in May 1991. The IJ rightly characterized this as the "most glaring discrepancy" in petitioner's case: the IJ's conclusion is supported by substantial evidence; the problem was raised and re-raised by the IJ without satisfactory resolution; and the discrepancy bears directly on the main thrust of petitioner's asylum claims.

Together, these error-free grounds reflect serious and unmistakable differences between the basic premise and facts of petitioner's original asylum application, on the one hand, and the story told in all of Liu's subsequent submissions, *i.e.,* his amended application, his household registration, and his live testimony, on the other. The valid reasons on which the IJ relied, which include what the IJ described as the "most glaring discrepancy" in petitioner's case, easily eclipse the errors we earlier identified in the IJ's decision, which, without exception, pertain to more trivial and tangential aspects of petitioner's claims. Accordingly, we conclude, on the basis of those concerns properly found by the IJ for doubting petitioner's credibility, that "notwithstanding admitted errors—overwhelming evidence supporting the administrative adjudicator's findings makes it clear that the same decision would have been reached in the absence of the errors." *Cao He Lin,* 428 F.3d at 402.[1]

---

1. Significant to our decision that remand, with respect to the IJ's adverse credibility

**112**

## II. Frivolous Application

Having concluded that the IJ's credibility ruling was supported by substantial evidence, we turn to the second issue presented on appeal, *i.e.*, whether the IJ correctly decided that petitioner's asylum application was frivolous.

Section 208(d) of the INA, 8 U.S.C. § 1158(d), as amended by the Immigration Reform and Immigrant Responsibility Act of 1996 ("IRIRA"), provides in relevant part:

> (d) *Asylum procedure*
>
> (4) Notice of privilege of counsel and consequences of frivolous application At the time of filing an application for asylum, the Attorney General shall—
>
> (A) advise the alien of the privilege of being represented by counsel and of the consequences, under paragraph (6), of knowingly filing a frivolous application for asylum . . .
>
> (6) Frivolous applications
>
> If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application.

8 U.S.C. §§ 1158(d)(4)-(6). Thus, a final decision that an asylum application is frivolous permanently forecloses the petitioner from all benefits under the immigration laws of this country.[2]

Because of the severe consequences of a finding of frivolousness under 8 U.S.C. § 1158(d)(6), the corresponding federal regulations prescribe the parameters within which an IJ and the BIA must operate in making these determinations:

> For applications filed on or after April 1, 1997, an applicant is subject to the provisions of section 208(d)(6) of the Act only if a final order by an immigration judge or the Board of Immigration Appeals specifically finds that the alien knowingly filed a frivolous asylum appli-

---

determination, is unnecessary in this case is the fact that the ground on which the IJ explicitly placed the greatest weight, *i.e.*, what she described as the "most glaring discrepancy" in petitioner's claim, is entirely free of error.

In this regard, we note our recent decision in *Lin Li Hua v. U.S. Dep't of Justice*, 453 F.3d 99, 2006 WL 1755289 (2d Cir. June 28, 2006). As in the instant case, *Lin Li Hua* involved a decision by an IJ who had expressly identified the credibility concern most significant to him, and, there too, the BIA summarily affirmed the IJ's decision. *Lin Li Hua*, at *9. In *Lin Li Hua*, however, the credibility concern described by the IJ to be "most critical" was found to be flawed. Under those circumstances, we held that "[t]he more central an errant finding was to the IJ's adverse credibility determination . . . the less confident we can be that remand would be futile." *Id.* Thus, in deciding that a remand would *not* be futile in *Lin Li Hua*, we stressed that the ground we found to be erroneous was precise-

ly the ground on which the IJ, according to his opinion, had relied most heavily in finding that the applicant was not credible. Conversely, in this case, because the ground on which the IJ (and, by inference, the BIA) relied most substantially is error free, we are able to conclude that "the same decision is inevitable on remand." *Lin Li Hua*, at 6.

2. The alien may still be eligible for withholding of removal or similar temporary protections where a deportation would result in dire persecutions. *See* 8 C.F.R. § 208.20 ("For purposes of this section, a finding that an alien filed a frivolous asylum application shall not preclude the alien from seeking a withholding of removal."). Thus, our reference to "all benefits under the immigration law of this country" should not be construed to include withholding of removal or other similar temporary protections, or to bar an alien, who is determined to have filed a frivolous application, from seeking any relief that is not otherwise barred by 8 U.S.C. § 1158(d)(6) or any other applicable law.

cation. For purposes of this section, an asylum application is frivolous if any of its material elements is deliberately fabricated. Such finding shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim. . . .

8 C.F.R. § 208.20; *see Scheerer v. U.S. Att'y Gen.*, 445 F.3d 1311, 1317 (11th Cir. 2006).

The regulation's text indicates that a finding of frivolousness requires record evidence that an alien has (1) "deliberately fabricated" (2) a "material" element of his asylum application, and (3) has been given a "sufficient opportunity" to address the perceived problems with his claim. But, the BIA has not, to our knowledge, issued any decisions from which reviewing courts can derive guidance as to how to interpret and apply the regulating language.

Similarly, our court has not addressed how we should evaluate frivolousness decisions on appeal. As a result, we have no binding circuit law on, *inter alia*, who carries the burden of proof, what degree of certainty is required, when an opportunity to be heard will be deemed sufficient, how "deliberate" and "material" a fabrication must be, and what deference the BIA owes to an IJ's finding in this context.

Several other circuits, however, have begun to formulate some law in this area. From their decisions, three principles seem to be emerging. First, the Third and Eleventh Circuits have explicitly held that "an adverse credibility determination alone cannot support a finding of frivolousness." *Scheerer*, 445 F.3d at 1317. The Third Circuit's decision in *Muhanna v.*

*Gonzales*, 399 F.3d 582 (3d Cir.2005), on which the *Scheerer* court relied, explained:

> [U]nder 8 C.F.R. § 208.20 a finding of frivolousness does not flow automatically from an adverse credibility determination in any event. Inconsistencies between testimony and an asylum application, while certainly relevant to a credibility determination that may result in the denial of an applicant's asylum claim, do not equate to a frivolousness finding under Section 1158(d)(6), which carries with it much greater consequences.

*Muhanna*, 399 F.3d at 589.

Second, prompted by the requirement in 8 C.F.R. § 208.20 that an alien be given a "sufficient opportunity to account for any discrepancies or implausible aspects of the claim," the Ninth Circuit has concluded that, even where an applicant has received an opportunity to reconcile *some* of the inconsistencies that concerned an IJ, a finding of frivolousness is not valid unless the alien had a chance to address specifically those concerns on which the frivolousness ruling was based:

> [Petitioner] had ample opportunities to explain the discrepancies that led to the adverse credibility finding. . . . To support the finding of frivolousness, however, the IJ relied with particularity on different discrepancies between what [petitioner] said and the extrinsic evidence. [Petitioner] was not given an adequate opportunity to address those additional discrepancies before the ruling on frivolousness was made. . . . The absence of a proper opportunity for [petitioner] to explain all discrepancies in the record, however, requires us to overturn the conclusion that the application was knowingly frivolous.

*Farah v. Ashcroft*, 348 F.3d 1153, 1158 (9th Cir.2003) (internal quotation marks omit-

ted).[3]

In all three cases discussed above, *Scheerer, Muhanna,* and *Farah,* the IJ's finding of frivolousness was overturned. These, along with *Alexandrov v. Gonzales,* 442 F.3d 395 (6th Cir.2006), *see infra* note 4, are the only *published* federal court decisions that we have found in which a frivolousness ruling has been declared invalid. Similarly rare are published decisions in which a federal court has upheld a finding of frivolousness. Indeed, we have located only four such decisions. From these latter cases, one can arguably discern another guideline. For the circumstances surrounding all four cases of "frivolousness" suggest that concrete and conclusive evidence of fabrication is needed to warrant a ruling that renders an alien permanently ineligible for immigration benefits in the United States.

For example, in *Efe v. Ashcroft,* 293 F.3d 899 (5th Cir.2002), the Fifth Circuit affirmed an IJ's finding that an applicant had knowingly made false statements. *Id.* at 908. The basis for the IJ's ruling was the existence of, *inter alia,* unrefuted den-

tal records that contradicted the alien's statements about his age at the time he claimed to have entered the United States. *See id.* at 902 n. 1. Similarly, in *Ignatova v. Gonzales,* 430 F.3d 1209 (8th Cir.2005), the Eighth Circuit upheld a frivolousness finding where the IJ had concluded that the hospital record introduced by the alien was plainly fraudulent. The IJ had so found on the basis of a letter from the issuing hospital that disavowed the alien's submission: "Ignatova's submission described treatment allegedly given to her by certain doctors and bore stamps and seals, but the record contains a letter from the hospital denying that those doctors were employed there, that the stamps and seals were authentic, or that Ignatova had been treated there." *Id.* at 1214.

And, in *Selami v. Gonzales,* 423 F.3d 621 (6th Cir.2005), the Sixth Circuit had no trouble affirming a frivolousness decision based on the IJ's finding that the alien had submitted a forged newspaper article. To strengthen his asylum petition, the applicant entered into evidence a March 30, 2001, article purportedly from an Albanian

---

**3.** The *Farah* court's holding also suggests that, when a finding of frivolousness is possible, a petitioner is entitled to an opportunity to address perceived problems in his application that goes beyond the usual opportunity to be heard that an alien is typically accorded during immigration proceedings. Requiring a more comprehensive opportunity to be heard in the frivolousness context makes sense in light of what is at stake in a frivolousness decision, for both the alien and the government. *See In re S–M–J,* 21 I. & N. Dec. 722, 727 (BIA 1997) ("[I]mmigration enforcement obligations do not consist only of initiating and conducting prompt proceedings that lead to removals at any cost. Rather, as has been said, the government wins when justice is done."). Giving aliens a meaningful opportunity to address an IJ's concerns is part of guarantying due process, and it is well-settled that the requirements of due process "are flexible and dependent on the circumstances of the particular situation examined." *Augus-*

*tin v. Sava,* 735 F.2d 32, 37 (2d Cir.1984) (citing *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Thus, what qualifies as a "sufficient opportunity" for the purposes of satisfying the agency regulations governing frivolousness findings would, we would think, have to be *more* ample than what suffices in the ordinary course of asylum proceedings. *Cf. Ming Shi Xue,* 439 F.3d at 114–15 (holding, with respect to standard credibility rulings, that "when an inconsistency is not self-evident, an IJ may not rely on it to support a credibility determination without first bringing the perceived discrepancy to the alien's attention, *thereby giving the alien an opportunity to address and perhaps reconcile the seeming inconsistency")* (emphasis added). But, these are precisely the questions that we expect the BIA to further explore on remand in expounding standards, in the first instance, for how frivolousness cases should be handled.

newspaper. Shortly thereafter, the IJ received an authentic copy of that very issue of the same paper from the Library of Congress, which had requested it directly from the National Library of Albania. The applicant's article clearly did not match the true copy. *See id.* at 624, 626.

Finally, in *Barreto–Claro v. U.S. Att'y Gen.*, 275 F.3d 1334 (11th Cir.2001), the asylum seeker filed a second application admitting that he lied in his first application. The *Barreto–Claro* court emphasized that the applicant did not argue that his fraudulent statements were not material nor knowingly made, but instead sought to explain why he lied, *i.e.*, as the court and BIA described it, " 'why concededly material fabrications were knowingly made.' " *Id.* at 1339.

In each of these four cases, the frivolousness ruling against the applicant was connected to tangible evidence of fabrication that could not reasonably be disputed, *i.e.*, dental records casting serious doubt on the asylum seeker's alleged age, an official hospital letter denying the authenticity of a document purportedly created by that hospital, an original newspaper that demonstrates beyond peradventure that an alien's proffered article is counterfeit, and a confession to a material fabrication. Looking at both those cases that have affirmed findings of frivolousness and those that have vacated them, it would not be unreasonable to conjecture that federal courts seem to require a heightened evidentiary standard in evaluating frivolousness.[4] Without a well-developed body of case law, however, it is premature to say how much beyond the "garden-variety" inconsistencies that are the routine basis of adverse credibility decisions is required to support a finding of frivolousness. We simply have too few data points from which to extrapolate, with any confidence, a uniform federal standard.

\*    \*    \*    \*    \*    \*

How the case before us would fare under these emergent standards is also uncertain. The IJ's conclusion that Liu's application was frivolous was based on (a) the IJ's apparent belief that petitioner's claim was "marred with inconsistencies and implausibilities and [was] *suggestive* of fraudulent documentation," and (b) the significant discrepancy between petitioner's original application (in which he claimed that his wife gave birth to their daughter) and his subsequent story that his wife was forced to abort her second pregnancy and that their daughter was actually adopted. Under *Scheerer* and *Muhanna*, the first of these reasons, which attempts to parlay an ordinary adverse credibility decision into a finding of frivolousness automatically, would seem to be invalid. The IJ's reliance on credibility concerns is especially doubtful in this case since (a) the IJ's adverse credibility ruling is not free of error, *see supra*, and (b) the IJ herself indicates that the evidence is only "suggestive" of fraudulent documents.

Had the IJ relied exclusively on her general credibility ruling to conclude that Liu's application was frivolous, we might have decided that we could summarily reverse the frivolousness decision ourselves (as has occurred in more than one case in our circuit).[5] But the IJ's second ground

---

**4.** *See also Alexandrov v. Gonzales*, 442 F.3d 395, 407 (6th Cir.2006) (concluding that an immigration court's reliance on hearsay evidence, *e.g.*, State Department reports, to support a finding of frivolousness violated the asylum seeker's due process rights).

**5.** At least two findings of frivolousness have been vacated or reversed by panels of this Court through unpublished summary orders in the past few months. *See Ji Fang Tian v. Gonzales*, 2006 WL 1070915 (2d Cir. April 21, 2006) (reversing frivolousness finding); *Min Xin Yang v. BCIS*, 2006 WL 1049070 (2d Cir.

is potentially more valid. Petitioner acknowledged that his original I–589 statement contained incorrect information about the natural birth of the daughter he now maintains was adopted. For the purposes of analyzing the IJ's frivolousness determination, Liu's admission raises a number of difficult questions. Is Liu's concession that his first statement included erroneous information tantamount to a confession that he "deliberately fabricated" either his first (or his second) application? *Cf. Barreto–Claro*, 275 F.3d at 1337–39. Are we permitted to find that an application is frivolous when we know only that one of two written statements was incorrect, but cannot be certain which one? Even if we accept the IJ's credibility ruling (notwithstanding its errors), could we conclude with sufficient confidence that Liu *knowingly* invented a story about an adopted daughter? (There is, after all, some chance that Liu simply chose, because he was unaware of the full range of asylum claims he could assert, not to include in his application what he considered to be extraneous information.) Moreover, does a misstatement in a *first* submission, which did not further the specific asylum claim pressed in a *second* application, qualify, for the purposes of frivolousness, as a deliberate fabrication of a *material* element?

■ These are not easy questions. As a result, we cannot comfortably ascertain the proper outcome in this case in the absence of a set of standards for adjudicating frivolousness appeals. As noted earlier, to date, neither the BIA nor this court have squarely addressed the issue of when and under what circumstances a finding of frivolousness is proper. Hence, were we to generate standards ourselves, we would be forced to start essentially from scratch. Federal courts, of course, do sometimes

answer questions of first impression without administrative guidance. But they need not do so in all cases. And, for the reasons we give below, we believe this is an appropriate occasion to vacate and remand the IJ's frivolousness determination to the BIA so that it may, in the first instance, set down clear and explicit standards by which frivolousness decisions may be judged. In doing so, we encourage the BIA to consider not only the relevant statutes and regulations, but also the principles articulated by our sister circuits in the decisions surveyed above.

\*    \*    \*    \*    \*    \*

Because we conclude, as a matter of *discretion,* that it is prudent and useful for us to remand the issue of frivolousness, we need not address the more complicated question of when remands to the BIA are *required* by elementary principles of administrative law. *Cf. Gonzales v. Thomas,* —— U.S. ——, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (per curiam). There are six reasons why this case is, in our view, an especially attractive candidate for remand.

*Insufficient agency attention*—Our review of the record suggests that neither the IJ, who made her frivolousness determination in the course of a few short paragraphs, nor the BIA, which summarily affirmed the IJ's decision, considered seriously the difficult issues and questions of first impression that this appeal presents. Under the circumstances, it is clearly desirable to have the BIA clarify this neglected, but important, issue of asylum law.

*National uniformity*—In the frivolousness context, uniformity is not just uniquely possible, but is also of unusual importance. Since none of the circuit courts have, as yet, produced a substantial body

April 19, 2006) (vacating frivolousness finding).

of law with respect to frivolousness, there is a real opportunity for the BIA to take the lead in the establishment of uniform national standards for deciding when a finding of frivolousness is appropriate. It is, of course, desirable for *all* asylum petitions to be handled in a consistent manner by the various circuits. But, the grave consequences of a frivolousness finding amplify the importance of ensuring that an applicant's eligibility for asylum benefits in this country does not depend on the circuit that, by fortune or fate, reviewed the case.

*Statutory ambiguity*—There is language in the relevant statute, 8 U.S.C. § 1158(d), and in the corresponding regulation, 8 C.F.R. § 208.20, that arguably requires interpretation and clarification. Unlike appeals that raise issues that either do not implicate statutory language, or do not involve possibly ambiguous language, here there is every reason for the BIA to have the first opportunity to construe the laws that Congress has charged it to administer. *See generally Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

*Dearth of circuit law*—Our circuit has literally no case law on this subject. That makes remand a desirable option for at least two reasons. First, we may send the case to the BIA without concern that our decision to do so (a) would countermand the approach taken in binding circuit precedent, or (b) would create needless conflict between circuit holdings and agency law. *Cf. Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (holding that a court's earlier construction of a statute trumps an agency's more recent construction only if the original interpretation by the federal court was thought to be premised on the unambiguous terms of the statute). Second, we do not even have *related* case law to which we can turn, or

from which we can extract some basic principles to guide us in determining what approach our circuit should take to frivolousness.

*High volume*—This is not an idiosyncratic case where the dearth of prior law is a natural product of the infrequency with which the issue presents itself. On the contrary, as we are starting to see, virtually every asylum case that contains an adverse credibility ruling has the potential of giving rise to a finding of frivolousness. Given the high volume of cases that may include this issue, and because the BIA, in performing its appellate function, will review these decisions long before they are brought before us, we believe there is great value in having the BIA develop standards as it addresses these cases, which, in turn, will inform how we appraise findings of frivolousness when they reach us in the future.

*Importance of the issue*——A finding of frivolousness is a potential "death sentence" for an alien's *immigration* prospects. *See Muhanna*, 399 F.3d at 588. *But cf. supra* note 2. Where so much can be lost—and especially in an area of law in which, even in the ordinary case, a lot is at stake, *see Ming Shi Xue*, 439 F.3d at 114 ("Whether the danger is of religious discrimination, extrajudicial punishment, forced abortion or involuntary sterilization, physical torture or banishment, we must always remember the toll that is paid if and when we err.")—it is imperative that claims be adjudicated in a fair and reasoned way. Standardless and *ad hoc* decisionmaking by federal courts or by individual immigration judges is especially to be avoided with respect to the issue before us today. And the place to start in determining standards is in the agency empowered by Congress to administer the law, the BIA.

\*     \*     \*     \*     \*     \*

118

For the foregoing reasons, we DENY the petition for review with respect to the IJ's adverse credibility ruling, we GRANT the petition for review with respect to the finding of frivolousness, and we VACATE that finding and REMAND the case to the BIA for further proceedings consistent with this opinion.