04-5027-ag
Mei Juan Zheng v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term 2007

(Argued: October 3, 2007    Decided: February 1, 2008
                      Errata Filed: February 27, 2008)
Docket No. 04-5027-ag

----------------------------------------------------X

MEI JUAN ZHENG,

                              Petitioner,

      - against -

MICHAEL B. MUKASEY,[1] Attorney General of
the United States,

                              Respondent.

----------------------------------------------------X

Before:   FEINBERG, SOTOMAYOR, and WESLEY, Circuit Judges.

Petitioner seeks review of a decision of the Board of Immigration Appeals affirming a decision of the Immigration Judge finding that she knowingly made a frivolous application for asylum. We grant the petition, vacate the BIA's decision, and remand the case for the BIA to consider antecedent questions regarding (1) the applicability of the frivolousness statute to withdrawn asylum applications and (2) an IJ's discretion to avoid entering frivolousness findings even if the statutory and regulatory conditions for frivolousness have been met.

                 H. RAYMOND FASANO, Madeo & Fasano, New York, NY,
                    for Petitioner.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted as the respondent in this case.

R. ALEXANDER GORING, Office of Immigration Litigation, Civil Division (Alice H. Martin, United States Attorney for the Northern District of Alabama; Jenny L. Smith, Assistant United States Attorney, on the brief), for Respondent.

FEINBERG, Circuit Judge:

A person who makes an application for asylum determined to be "frivolous," or deliberately and materially false, is subject to a grave penalty: permanent ineligibility for most forms of relief under the immigration laws. Petitioner in this case, Mei Juan Zheng ("Zheng"),[2] deliberately filed a materially false asylum application, but withdrew it before the immigration judge ("IJ") made a final determination of the application. Zheng seeks review of an August 2004 decision of the Board of Immigration Appeals ("BIA") affirming an April 2003 decision of the IJ finding that Zheng knowingly made a frivolous application for asylum. We remand her case to the BIA to clarify whether she is properly subject to the frivolousness bar.

**I.    BACKGROUND**

---

[2] Some documents in this case, though not the official caption, give Petitioner's name as "Zheng Mei Juan" or "Zhen Mei Juan."

Zheng, a native and citizen of the People's Republic of China, entered the United States illegally in 2000 with the help of a "snakehead," or smuggler. She was subsequently served with a Notice to Appear charging her as removable as an immigrant not in possession of a valid entry or travel document, pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). Zheng filed an application for asylum and withholding of removal, in which she alleged that local birth control officials forced her to have an abortion and insisted that she accept an intra-uterine device.

IJ Gabriel C. Videla engaged in the following exchange with Zheng at a hearing in August 2000:

> Q. Now, before I can accept the application I have to give you some warnings. If I later determine that this application is frivolous, this means it's an application that contains false information, then you will be forever barred from ever receiving any Immigration benefits under our laws. Let me explain to you what that means. If, for example, you live here for the next 20 years or you may be a U.S. citizen or you have U.S. citizen children it would make no difference. You would still not be able to be here legally in this country again if I make a determination that you filed a frivolous application. Have you understood this?
> A. Yes. I understand.
> Q. And having understood this do you still represent to the Court under oath that everything on this application is true and accurate?
> A. Yes.

The IJ also gave Zheng a written copy of the warning.

In January 2001, Zheng withdrew her asylum application with prejudice at a calendar hearing. She filed a new

application in May 2001, seeking withholding of removal under the Convention Against Torture on the grounds that the snakehead to whom she owed money would harm her if she returned to China, and that Chinese officials would jail and torture her for illegally entering the United States. In her new application, Zheng admitted that, on the snakehead's advice, she had lied about her birth control claim for fear of being returned to China. Zheng also acknowledged the lie at an April 2003 hearing, saying that she had made up the birth control claim but had since decided, "I cannot lie to the Immigration Judge. I have to tell him the truth."

After Zheng finished testifying, the IJ asked Zheng's lawyer to explain whether he "should or should not make a frivolousness finding." Her lawyer answered that the IJ had discretion whether to make a frivolousness finding, and that Zheng should be treated leniently because she had voluntarily come forward with the truth more than two years earlier and was only 18 when she entered the United States. The IJ agreed that Zheng's forthrightness and her youth were "favorable factors," but he concluded that he lacked discretion under the statute and implementing regulations to avoid a frivolousness finding. He also concluded that Zheng's withdrawal of her false application had no effect on the applicability of the frivolousness bar. Because the IJ found that Zheng had

-4-

deliberately made a materially false asylum application after receiving adequate notice, he entered a frivolousness finding.[3]

The BIA affirmed the IJ's decision without opinion on August 27, 2004. Zheng timely appealed.

**II. DISCUSSION**

Title 8, Section 1158(d) of the United States Code provides in relevant part:

> (4) <u>Notice of privilege of counsel and consequences of frivolous application</u>
>
> At the time of filing an application for asylum, the Attorney General shall--
>
> (A) advise the alien of the privilege of being represented by counsel and of the consequences, under paragraph (6), of knowingly filing a frivolous application for asylum . . . .
>
> . . .
>
> (6) <u>Frivolous applications</u>
>
> If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application.

8 U.S.C. § 1158(d). An asylum application is "frivolous" if any of its material elements is deliberately fabricated. 8 C.F.R.

---

[3] The IJ also rejected Zheng's claim for withholding of removal under the Convention Against Torture. Zheng has not pursued that claim on appeal.

-5-

§ 208.20; cf. In re Y- L-, 24 I. & N. Dec. 151, 155 n.1 (B.I.A. 2007) ("Obvious legal insufficiency of a claim does not support a frivolousness finding." (citing Scheerer v. U.S. Att'y Gen., 445 F.3d 1311, 1318 (11th Cir. 2006))). Thus, if an IJ determines that an alien knowingly made an application for asylum with one or more deliberately fabricated material elements, and the alien received proper notice, the alien is permanently barred from receiving most benefits under the immigration laws.[4]

An alien is entitled to a variety of procedural safeguards before being subject to this permanent bar. They include

> (1) notice to the alien of the consequences of filing a frivolous application; (2) a specific finding by the Immigration Judge or the Board that the alien knowingly filed a frivolous application; (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated; and (4) an indication that the alien has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

Y- L-, 24 I. & N. Dec. at 155 (applying 8 U.S.C. § 1158(d)(4)(A) and 8 C.F.R. § 208.20). The BIA has clarified that the IJ must address the question of frivolousness separately from any adverse credibility determination, id. at 156, and must provide "cogent and convincing reasons" for

---

[4] An alien who has made a frivolous asylum application may still seek withholding of removal. 8 C.F.R. § 208.20.

finding, by a preponderance of the evidence, deliberate fabrication of a material element of the claim, id. at 158.

Zheng's initial petition unquestionably contained deliberately fabricated material elements, and she received the safeguards described in the BIA's decision in Y- L-. First, before accepting her initial application, the IJ gave Zheng both oral and written warnings about the consequences of proceeding with a frivolous application. Zheng said she understood the consequences, and she swore that her application was truthful. Second, the IJ made a specific finding that Zheng knowingly filed a frivolous asylum application, which was not part of an adverse credibility determination. Third, as noted above, the evidence supporting the frivolousness finding was uncontroverted. Finally, Zheng was given an opportunity to account for the falsehood; she explained that she had intentionally lied because of the snakehead's instructions to do so.[5]

---

[5] In Y- L-, the BIA stated that it would be "good practice" for an IJ to raise concerns about a potential frivolousness finding before the end of proceedings. Y- L-, 24 I. & N. Dec. at 159-60. We recently asked the BIA to consider, inter alia, "to what extent the IJ is required, if at all, to inform the applicant during the course of the proceedings that he or she is considering a frivolousness determination before he or she renders such a determination." Biao Yang v. Gonzales, 496 F.3d 268, 279 (2d Cir. 2007) (per curiam) (emphasis added). The BIA has not yet issued a decision pursuant to our remand in Biao Yang.

Zheng argues to us that even though the IJ asked Zheng's

But although we conclude that Zheng's petition contained deliberately fabricated material elements and that the IJ followed the appropriate procedures, we remand to the BIA to consider antecedent issues concerning the applicability of the frivolousness statute to an asylum application that is filed and then withdrawn before a decision on its merits. Specifically, we invite the BIA to consider the following questions: (1) Is the IJ's authority to "determine[] that an alien has knowingly made a frivolous application for asylum" limited to circumstances in which the IJ makes "a final determination on such application"? 8 U.S.C. § 1158(d)(6) (emphasis added). (2) Does an IJ retain any discretion under 8 U.S.C. § 1158(d)(6) to decline to make a frivolousness finding even if she finds that the statutory and regulatory conditions for frivolousness have been met? We discuss these questions in turn.

    1.    Whether the IJ's authority to "determine[] that an alien has knowingly made a frivolous application for asylum" is limited to circumstances in which the IJ makes "a final determination on such application."

A provision in § 1158(d)(6) states that, if the Attorney General determines that an alien has knowingly made a frivolous

---

lawyer to explain whether a frivolousness finding was warranted, Biao Yang requires earlier or more extensive warnings. In light of the pending remand in that case, we decline to express a view on the matter now.

-8-

asylum application, "the alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application." 8 U.S.C. § 1158(d)(6) (emphasis added). No final determination was ever made on Zheng's fraudulent asylum application, because she withdrew it at a master calendar hearing, before she testified in support of it and before the IJ issued any decision.

This language is susceptible of at least two meanings, each of which is potentially problematic. Read literally, the statute seems to state that a frivolousness finding concerning an asylum application may take effect only after a final determination is made on the same application. If there were never a final determination on the application -- if it were withdrawn, for instance -- then the frivolousness finding would not take effect at all. Because an alien may withdraw an asylum application at any time before a decision is issued, see 8 C.F.R. § 103.2(b)(6), this construction would seem to allow an alien to withdraw a materially false application on the eve of a decision without suffering any adverse consequences for the falsehood. Needless to say, such an outcome would undermine the potency of the frivolousness bar as a deterrent to lying.

But the alternative view -- that an IJ may make a frivolousness finding concerning an asylum application without also making a final determination on such application -- is

difficult to square with the plain language of the statute. Moreover, this construction could lead to absurdities of its own, because it does not limit an IJ's power to make frivolousness findings to applications actually pending before the IJ. Without any limiting language, could an IJ make a frivolousness finding as to a decade-old asylum application, for example, or one submitted before a different IJ?[6]

Each view is backed by case law from other circuits. The Sixth Circuit has held that a withdrawn asylum application may form the basis of a valid frivolousness finding, although it did not address the ambiguities in the statutory language that we raise here. See Lazar v. Gonzales, 500 F.3d 469, 476 (6th Cir. 2007) ("Lazar's withdrawal of his asylum application did not obviate the need for the IJ to determine whether his false application should be deemed frivolous. . . . [T]he IJ's frivolousness finding was not mooted by the withdrawal of [Lazar's] application."). The Eleventh Circuit reached the same conclusion in a case where the alien filed an amended asylum application, although he did not withdraw the first application

---

[6] In Yuanliang Liu v. U.S. Department of Justice, 455 F.3d 106 (2d Cir. 2006), we identified but did not answer a number of "difficult questions," including whether "a misstatement in a first submission, which did not further the specific asylum claim pressed in a second application, qualif[ies], for the purposes of frivolousness, as a deliberate fabrication of a material element." Id. at 116. On remand, the BIA did not address the question. See Y- L-, 24 I. & N. Dec. 151.

-10-

with material misstatements. See Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1339 (11th Cir. 2001) (permitting frivolousness finding against alien because of misstatements in first asylum application, which alien replaced prior to hearing with accurate, amended application).[7] By contrast, the Third Circuit has held that false statements in a time-barred asylum application are not "material," and therefore cannot form the basis for a frivolousness finding, because the application could not be granted under any circumstances and thus the misstatements "had neither the natural tendency nor the capability of influencing the decision." Luciana v. Att'y Gen., 502 F.3d 273, 280 (3d Cir. 2007). But see Mingkid v. U.S. Att'y Gen., 468 F.3d 763, 768 (11th Cir. 2006) (finding no barrier to frivolousness finding with respect to time-barred application); Ignatova v. Gonzales, 430 F.3d 1209, 1214 (8th Cir. 2005) (assuming same, without analysis). The logic of Luciana could potentially be extended to false statements in an asylum application withdrawn before a decision on the merits.

---

[7] Unlike this case, the aliens in Lazar and Barreto-Claro did not reveal their false statements voluntarily. In Lazar, the alien was surprised by the government at cross-examination, after which he withdrew his asylum application. See Lazar, 500 F.3d at 473-74. In Barreto-Claro, the alien amended his application upon learning that immigration officials had discovered that he had lied. See In re Barreto-Claro, No. A76 957 148, at 3 (B.I.A. Dec. 13, 1999).

We recognize that in addition to these two possible meanings, there may be other viable interpretations of the statute, informed by the broader statutory and regulatory framework, legislative history, and other considerations. We decline to decide this vexing question of statutory construction, on whose outcome the disposition of this petition depends, without the benefit of the BIA's views.

    2.    Whether an IJ retains any discretion under 8 U.S.C. § 1158(d)(6) to decline to make a frivolousness finding even if the IJ finds that the statutory and regulatory conditions for frivolousness have been met.

If the first construction of § 1158(d)(6) discussed above is correct -- if an IJ may not make a frivolousness finding with respect to an asylum application on which the IJ does not also make a final determination -- then the frivolousness finding against Zheng must be vacated. But if the second construction is correct, and an IJ may make a frivolousness finding with respect to any asylum application that is deliberately and materially false, withdrawn or not, then a further question arises: does the IJ retain any discretion to avoid doing so?

The IJ in this case concluded that he had none. Although he acknowledged the existence of "some favorable factors in this case," such as Zheng's youth and her decision to withdraw

-12-

her false application voluntarily, he held that they were of no moment, because 8 C.F.R. § 208.20 "does not confer this tribunal with any discretion in this regard." But a review of cases with similar facts reveals that some IJs do not consider themselves bound to make findings of frivolousness simply because an applicant has admitted to deliberately making false material statements in a pending or prior asylum application. See, e.g., Ying Lin v. Gonzales, 245 F. App'x 33 (2d Cir. 2007) (summary order); Xiu Yu Bian v. Gonzales, 221 F. App'x 45 (2d Cir. 2007) (summary order).[8]

Moreover, the statutory and regulatory language is not as unambiguous as the IJ's decision suggests. The regulatory language on which he relied states that a frivolousness finding "shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim." 8 C.F.R. § 208.20 (emphasis added). This sentence simply imposes a condition that must be satisfied before any frivolousness

[8] Despite the petitioner's misrepresentations, the IJ in Xiu Yu Bian rejected the Government's motion for a frivolousness finding because the petitioner (1) had received bad advice from counsel, (2) voluntarily recanted her false statements, and (3) was only 19 years old when the false application was filed. In re Xiu Yu Bian, No. A95 673 235, at 14 (Immig. Ct. N.Y. City Jan. 31, 2005).

-13-

finding is made; it does not mandate that a frivolousness finding be made in all cases where an applicant has had sufficient opportunity to account for discrepancies. In fact, this language might instead reasonably be taken to support Zheng's position: a rule that permits the IJ to consider only the fact that an alien lied, not the reasons she did so, may not provide the alien with the "sufficient opportunity" to explain that the regulation requires.[9]

The language of the statute itself is opaque. It states that an alien is subject to the frivolousness bar if an IJ "determines that the alien has knowingly made a frivolous asylum application" after receiving notice. 8 U.S.C. § 1158(d)(6). It is unclear here whether the word "determines" connotes an exercise of judgment or a mechanical application of a legal conclusion following pertinent factual findings.

---

[9] Although the Eleventh Circuit held that the "sufficient opportunity" requirement does not require an IJ to consider the reasons "why concededly material fabrications were knowingly made," Barreto-Claro, 275 F.3d at 1339 (internal quotation marks omitted), our own court has suggested that "what qualifies as a 'sufficient opportunity' for the purposes of satisfying the agency regulations governing frivolousness findings would, we would think, have to be more ample than what suffices in the ordinary course of asylum proceedings," Yuanliang Liu v. U.S. Dep't of Justice, 455 F.3d 106, 114 n.3 (2d Cir. 2006) (emphasis omitted).

In considering whether an IJ has any discretion with respect to making frivolousness findings, one potentially useful question the BIA may wish to consider is whether the doctrine of timely recantation, found elsewhere in its jurisprudence, has any application in this context. See Matter of M—, 9 I. & N. Dec. 118, 119 (B.I.A. 1960) ("[W]here an alien in an immigration proceeding testifies falsely under oath as to a material fact but voluntarily and without prior exposure of his false testimony comes forward and corrects his testimony, perjury has not been committed and the charge based thereon is not sustained."). At least one non-precedential BIA opinion has declined to rule out the possibility that timely recantation could apply in this context. In re Lazar, No. A72 026 924, at 1 (B.I.A. Feb. 17, 2006) ("[E]ven if there could be circumstances in which a timely retraction of a deliberate material fabrication could be effective to preclude a finding of frivolousness, . . . such a timely retraction did not occur.").

**III. CONCLUSION**

Remand is appropriate in this case as a matter of discretion for the reasons identified in Yuanliang Liu v. U.S. Department of Justice, 455 F.3d 106 (2d Cir. 2006): (1) insufficient attention by the IJ and the BIA to the questions identified here; (2) the desirability of national uniformity

-15-

given the grave consequences of a frivolousness finding; (3) the ambiguity of the statute and corresponding regulations; (4) the dearth of law in this circuit related to these questions; (5) the high volume of cases that this issue implicates; and (6) the severe impact of a frivolousness finding on an alien's immigration prospects.  See id. at 116-17.

For the foregoing reasons, we grant the petition for review, vacate the frivolousness finding, and remand the case to the BIA for further proceedings consistent with this opinion.