[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 27, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13576
Non-Argument Calendar
_____

BIA Nos. A95-887-161 & A95-887-162

LILIANA MARIN,
RAFAEL MARIA ALMIRON GUIMILT,

                                                      Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                      Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(February 27, 2007)**

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Liliana Marin, and her husband, Rafael Maria Almiron Guimilt, through counsel, seek review of the Board of Immigration Appeals' ("BIA") decision, affirming the Immigration Judge's ("IJ") order denying their application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), after they overstayed the time permitted by the Visa Waiver Program. Although the BIA also denied their request for United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT") relief, the petitioners do not challenge that denial on appeal, and the issue is deemed abandoned. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1282 n.12 (11th Cir. 2001). We DISMISS, in part, and DENY, in part.

## I. BACKGROUND

Marin and Almiron-Guimilt, natives and citizens of Argentina, initially entered the United States on 30 November 2000, under the Visa Waiver Program ("VWP"),[1] with authorization to remain until 29 February 2001. On 1 July 2002, Marin filed an application for asylum and withholding of removal.[2] She indicated

---

[1] The VWP allows aliens from certain countries, applying as visitors for business or pleasure, to be admitted for a period not to exceed 90 days. 8 C.F.R. §§ 212.1(i), 217.2. If inadmissible or deportable after admission, the alien waives his right to a removal hearing, except for a hearing on a claim to political asylum. 8 C.F.R. § 217.4(b). At the asylum hearing, the IJ has jurisdiction to review eligibility for asylum and withholding or deferral of removal. 8 C.F.R. § 208.2(c)(1)(iv), (3)(i).

[2] Marin made no indication in her application whether she intended to include her husband. The IJ actually only denied Almiron-Guimilt's application for asylum, finding that he had not been included in his wife's claims for withholding of removal or CAT relief. The BIA,

2

that she was born on 22 January 1960, and that Almiron-Guimilt was born on 18 December 1949. Marin noted that she had worked as a beautician since 1976, and been self-employed from 1992 until 2000. Marin asserted that they were seeking asylum on the basis of political opinion, alleging that she had been threatened and harassed based on her poor financial situation and the state of Argentina's economy because she lost her hairdressing business due to a recession. In addition, Marin alleged that she feared age discrimination because nobody would hire a person over the age of 30, and thus, she would be unable to pay her bills and would starve to death. Marin further admitted that she was filing the application outside of the first year of her arrival to the United States, but explained that she was doing so because she "did not know what to do in [her] case." AR at 108.

The record additionally contained the 2002 and 2003 U.S. Department of State Country Reports on Human Rights Practices for Argentina. The 2002 report noted that the recession, which had begun in 1998, had deepened. As such, the local currency lost 70% of its value, 21.5% of the population was unemployed, and 50% of citizens lived below the poverty line. The report further stated that Argentina's constitution and laws prohibited discrimination on several grounds, including political opinion, economic position, and social class. Regardless,

---

however, affirmed the IJ's decision and findings as if the requests for relief were attributable to both Marin and Almiron-Guimilt.

3

"women encountered economic discrimination and occupied a disproportionate number of lower paying jobs." Id. at 97. Additionally, minimum wage "was not sufficient to provide a decent standard of living for a worker and family" and had not increased since 1993. Id. at 100. The 2003 report essentially was the same as in 2002, but with some improvements. Namely, the economy grew by 8%, and the national minimum wage increased.

On 19 August 2003, the Department of Homeland Security ("DHS") issued a Notice of Referral to Immigration Judge, noting that the petitioners had violated the VWP and referring their case for an asylum-only hearing. Prior to their hearing, the petitioners filed a motion for a continuance based on the fact that Marin was the beneficiary of an alien labor certificate and because her employer had complied with the Department of Labor's regulations by attempting to recruit, but failing to find, a qualified U.S. worker for a salon position. On 25 January 2005, Marin and Almiron-Guimilt appeared before the IJ with counsel for their asylum-only hearing. The IJ first found that a continuance was inappropriate because they wanted time to research adjustment of status law, an issue that the IJ did not have jurisdiction to consider. The IJ explained that, when the petitioners entered the United States under VWP, they signed a waiver and now were entitled only to an asylum hearing. The IJ stated that it would consider Marin's asylum and

4

withholding of removal claims, but only asylum for Almiron-Guimilt because he was not included on Marin's withholding of removal application.

At the hearing, Marin testified that she had been a barber and beautician for 30 years, and had owned a beauty salon for the last 8 to 9 years prior to leaving Argentina. She was 45 years old, and had moved to the United States because, in Argentina, once a person turns 30, it is "almost impossible to find [a] job." Id. at 69-70. Marin further stated that Argentina was "badly mismanaged," thus failing to provide her with opportunities. Id. at 70. The IJ then questioned Marin concerning her late filing, asking specifically why she had waited nearly two years to file her asylum application. Marin responded that she did not know the law or how to find it, and when the IJ asked whether she had sought help from somebody who did know, Marin responded in the negative. The IJ denied their application.

In the oral decision, the IJ found that Marin's testimony was "nonspecific" as to why she was unable to work after the age of 30 in Argentina, and further failed to explain specifically what had happened to her business. Id. at 43. Furthermore, the IJ was unable to discern what the petitioners' protected ground was because Marin failed to specify one, although the IJ assumed that she was asserting protection on the basis of age and social group, namely, being over the age of 30 and seeking employment. The IJ concluded that Marin failed to demonstrate that those over the age of 30 were "similarly situated," or that

5

unemployment constituted persecution. Id. at 43. Thus, the IJ found, the

petitioners failed to show persecution or that they, or their family, had ever been

harmed in Argentina. In addition, the IJ concluded that their late filing was not

justified by extraordinary circumstances simply because Marin did not know the

law, and she had not made sufficient efforts to learn it. Thus, the IJ found, the

petitioners were statutorily ineligible for asylum. Moreover, the IJ concluded, they

failed to establish eligibility for asylum on the merits because reasonable people in

their situation would not fear returning to Argentina. The IJ further concluded that

Marin failed to present evidence establishing eligibility for withholding of removal

or CAT relief.[3]

Marin and Almiron-Guimilt appealed the IJ's decision to the BIA, asserting

that the IJ erred by: (1) denying their motion for a continuance based on Marin's

pending application for a labor certificate; and (2) denying their asylum application

because they feared returning to Argentina based on political opinion and

membership in a particular social group. In Marin and Almiron-Guimilt's brief

before the BIA, they first argued that the IJ erred by failing to make a credibility

determination. They contended that, because the IJ did not find Marin's testimony

---

[3] It appears that Marin never asserted grounds for CAT relief in the asylum application. To the extent that she did, however, Marin and Almiron-Guimilt have not raised that issue on appeal and thus, it is deemed abandoned. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam) (holding that, where an appellant fails to raise arguments regarding an issue on appeal, that issue is deemed abandoned).

concerning past persecution incredible, it necessarily follows that they established a reasonable probability of future persecution. Moreover, the petitioners argued, the IJ incorrectly applied the "more likely than not standard" to their asylum claims, when it should have been applying a "reasonable possibility." Id. at 13 (citation omitted). The petitioners next asserted that the gaps contained in the transcript resulted in substantial prejudice, particularly in light of the fact that U.S. immigration law had become more restrictive since the time when they entered, and due to those changes, they could be barred from re-entering the United States for 3 to 10 years if they were deported. As a result, the petitioners requested a new hearing before the IJ to clarify the record. Marin further argued that they were not statutorily barred from filing asylum claims pursuant to due process and public policy, and based on extraordinary circumstances, namely, retroactive changes in U.S. immigration law occurring after they had entered the country.

The BIA adopted and affirmed the IJ's decision, and denied the Marin and Almiron-Guimilt's asylum application as untimely. The BIA further found no error in the IJ's conclusion that the petitioners failed to demonstrate a well-founded fear of persecution upon return to Argentina based on membership in the social group of being over the age of 30 and seeking employment. Moreover, the BIA concluded, the record did not support a finding that Marin and Almiron-Guimilt would more likely than not be tortured if they returned to Argentina. In addition,

7

the BIA stated that the IJ had jurisdiction only to consider the asylum and withholding of removal claims, and thus, declined to consider their adjustment of status claim. Finally, regarding the several instances of indiscernible statements at the hearing and contained in the IJ's oral decision, the BIA concluded "that the record [was] sufficiently clear when considered in conjunction with the [IJ's] supporting written order." Id. at 3.

## II. DISCUSSION

On appeal, the petitioners argue that the untimeliness of their asylum application was excused by extraordinary circumstances, specifically, changes in U.S. immigration law. The petitioners further argue that they established eligibility for asylum and withholding of removal based on persecution on account of their social group, namely, being over the age of 30 and seeking employment. They also request that this case be remanded for further proceedings because certain portions of the record are indiscernible. Finally, the petitioners raise an issue with the BIA's finding that the IJ did not have jurisdiction to consider their pending labor certification application.

"When the BIA issues a decision, we review only that decision, except to the extent the BIA expressly adopts the IJ's decision." Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005) (per curiam) (citation omitted). "Insofar as the BIA adopts the IJ's reasoning, we will review the IJ's decision as well." Id.

8

(citation omitted). Here, the BIA expressly adopted the IJ's reasoning, thus, we review the IJ's decision as well.

An alien can apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). An application filed after one year may be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing the application within the period specified . . . ." INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D). Nevertheless, section 1158(a)(3) provides, "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." INA § 208(a)(3), 8 U.S.C. § 1158(a)(3). This jurisdiction-stripping provision remains in effect after the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (2005). Chacon-Botero, 427 F.3d at 957.[4] Therefore, under current precedent, § 1158(a)(3) divests us of jurisdiction to review the BIA's determinations that asylum applicants filed an untimely application or failed to establish changed or extraordinary

---

[4] Though the petitioners' case commenced before the enactment of the REAL ID Act of 2005, the jurisdictional provisions apply to their case. See REAL ID Act of 2005, § 106(b), Pub. L. No. 109-13, 119 Stat. 231, 311 (stating that the jurisdictional provisions of § 1252(a)(2)(D) "shall take effect upon the date of the enactment" and shall apply to any case "in which the final administrative order of removal . . . was issued before, on, or after the date of the enactment.").

9

circumstances to excuse their untimely filing. Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1217-18 (11th Cir. 2002) (per curiam).

As a result, we lack jurisdiction to review the IJ's determination that the petitioners failed to demonstrate that they filed their petition for asylum within one year of arriving in the United States or that changed circumstances existed to justify their untimely filing. See id.; 8 U.S.C. § 1158(a)(3). Accordingly, we dismiss the Marin and Almiron-Guimilt's petition for review with regard to their asylum claim.

To the extent that the IJ's and the BIA's decisions were based on a legal determination, review is *de novo*. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The IJ's factual determinations are reviewed under the substantial evidence test, and "we must affirm the BIA's [and the IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (citations omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (citation omitted). "An alien seeking withholding of removal under the INA must show that his life or freedom would [more likely than not] be threatened [upon return to his country] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." Id.; see also INA § 241(b)(3),

10

8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(b). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted . . . upon his return to the country in question." Mendoza, 327 F.3d at 1287 (citation omitted). Neither the INA nor the regulations define "persecution," but we have indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (citation and internal quotations omitted). In the context of employment discrimination, we found that discrimination that "stops short of depriving an individual of a means of earning a living does not constitute persecution." Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001) (citation omitted). Thus, mere "termination from [one's] job and [the] inability to find another . . . is [ ] insufficient to show past persecution." Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1291 (11th Cir. 2006) (per curiam), pet. for cert. filed, (Sept. 12, 2006) (No. 06-367).

Upon reviewing the record, substantial evidence supports the IJ's and the BIA's findings that Marin and Almiron-Guimilt were not entitled to withholding of removal under the INA. Marin and Almiron-Guimilt failed to demonstrate a deprivation of earning a livelihood, and mere unemployment does not rise to the level of persecution. See Barreto-Claro, 275 F.3d at 1340; Zheng, 451 F.3d at 1291. Moreover, they did not provide specific information concerning the

11

circumstances surrounding the loss of Marin's business. Thus, Marin and Almiron-Guimilt's claim for withholding of removal necessarily fails. Accordingly, we deny the petition with regards to this claim.

Review of constitutional challenges is *de novo*. Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003) (per curiam) (citation omitted). "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 306, 113 S. Ct. 1439, 1449 (1993) (citation omitted). While "failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest," Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999) (citation omitted), aliens do have a protected interest in petitioning for asylum, Haitian Refugee Ctr. v. Smith, 676 F.2d 1023, 1038 (5th Cir. Unit B 1982). "Due process is satisfied only by a full and fair hearing." Ibrahim v. INS, 821 F.2d 1547, 1550 (11th Cir. 1987) (citation omitted). To prevail on a due process challenge, however, an alien must show substantial prejudice, that is, that the outcome would have differed, had the due process violation not occurred. Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003) (citation omitted).

A careful review of the record demonstrates that the Marin and Almiron-Guimilt's claim that they were denied due process is without merit. Despite the fact that the hearing transcript and the IJ's oral decision contain indiscernible

12

portions, Marin and Almiron-Guilmilt have failed to demonstrate that they were substantially prejudiced by any gaps in the record. See id. Marin and Almiron-Guilmilt make only a blanket assertion that omitted testimony would demonstrate substantial prejudice. They have failed, however, to explain what that testimony was in an effort to demonstrate substantial prejudice, that is, how their outcome would have differed. See id. Accordingly, we deny their petition with respect to this claim.

Additionally, although Marin and Almiron-Guimilt's opening brief's statement of issues and summary of the argument sections mention their contention that the BIA abused its discretion by ignoring their eligibility for adjustment of status under the pending application for labor certification, they appear to concede that "visa issues [regarding status adjustments] are not issues before this Court." Petitioners Br. at 10. Concluding that petitioners' adjustment of status argument is not fairly presented, we decline to address it. Accordingly, we deny their petition with respect to this issue as well.

## III. CONCLUSION

Pursuant to the jurisdiction-stripping provision of 8 U.S.C. § 1158(a)(3), we lack jurisdiction to review the IJ's determination that Marin and Almiron-Guimilt's asylum application was untimely. Moreover, the petitioners failed to demonstrate any persecution, and thus, failed to demonstrate eligibility for withholding of

removal.  Also, because the petitioners failed to demonstrate substantial prejudice resulting from the indiscernible portions of the record, they have not established a due process violation.  Finally, we decline to entertain petitioners' adjustment of status argument.  Accordingly, Marin and Almiron-Guimilt's petition is **DISMISSED** in part, **DENIED** in part.