[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15873
Non-Argument Calendar

_____

BIA No. A98-561-367

MARIANO SERVO REYNOSO,
a.k.a. Mariano Servo Reynoso Fuentes,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(July 22, 2008)**

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Mariano Servo Reynoso, a native and citizen of Peru, seeks, through counsel, review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order of removal and denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). The IJ and BIA found that Reynoso's application for asylum was untimely and that Reynoso had not demonstrated exceptional circumstances to justify this untimeliness. The IJ and BIA also found that Reynoso had not demonstrated that it was more likely than not that he would be persecuted or tortured if returned to Peru. For the reasons discussed more fully below, we dismiss the petition in part and deny the petition in part.

## I. Facts

Reynoso entered the United States on October 21, 2002. On March 29, 2005, he filed an application for asylum, withholding of removal, and CAT relief, claiming that he had been or would be persecuted or tortured on account of his imputed political opinion.

In his application and at his asylum hearing, Reynoso claimed the following. He was the public accountant and auditor for the Peruvian Defense Department. Because of his position as auditor, he was required to remain politically neutral. In

2

the course of his auditing employment, he discovered evidence of fraudulent activity by high-level officials within the administration of former President Alberto Fujimori. He documented his findings in a written report. The report was classified and not intended for public disclosure. His supervisor, Colonel Limber Almonte, however, asked Reynoso to publicly disclose the findings. His supervisor reasoned that the report's incrimination of high-ranking officials loyal to the former president would accelerate the replacement of these individuals with others who were loyal to then-current President Alejandro Toledo. Reynoso refused, citing the classified nature of his report. Following his refusal, Reynoso and his family were persecuted.

Specifically, Reynoso began receiving threatening telephone calls from people promising harm to him and his family. He continued to receive these threats on a weekly basis for three years. He and his wife both suffered physical stress and illness as a result of these threats. Also, Reynoso's house was burglarized. The burglars stole two television sets. His niece reported the burglary to the police, but the police did not take action or maintain any records of the incident. Furthermore, Reynoso was demoted and transferred to a different division in March 2000.

Eventually, Reynoso and his wife both were forced to resign their jobs and flee to the United States. He also brought his 19-year-old daughter to the United

States. His 22-year-old daughter, a daughter from a previous marriage, and his mother, however, remained in Peru without incident. Reynoso feared returning to Peru, though, because Toledo's supporters remained. He was unable to relocate within Peru because he was well-known by many people in the military throughout the country.

Reynoso explained that his application for asylum was not filed within one year of his arrival in the United States because it originally was being prepared by people at his church and he was expelled from the church before the application was complete. Reynoso also explained that, while his partially completed application was sent to him by the church, he never filed the paperwork on his own because he was ill at the time.

## II. Asylum

We review our subject-matter jurisdiction de novo. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). An alien can apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). An application filed after one year may also be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating

4

to the delay in filing an application within the period specified . . . ." INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D). Nevertheless, § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." 8 U.S.C. § 1158(a)(3); Alim v. Gonzales, 446 F.3d 1239, 1253 (11th Cir. 2006) (holding that, because the IJ denied an asylum application as untimely, we lacked subject-matter jurisdiction to review the final order of removal as it pertained to the asylum claim). This jurisdiction stripping provision remains in effect after the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (2005). Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005).[1]

Both the IJ and the BIA found that Reynoso's asylum application was untimely and that he failed to establish changed or extraordinary circumstances that excused the untimely application. Accordingly, we lack jurisdiction to consider Reynoso's asylum arguments on appeal and dismiss his petition in this respect. See Alim, 446 F.3d at 1253.

---

[1] Although Reynoso's case commenced before the enactment of the REAL ID Act of 2005, the jurisdictional provisions do apply to his case. See REAL ID Act of 2005, § 106(b), Pub. L. No. 109-13, 119 Stat. 231, 311 (stating that the jurisdictional provisions of 8 U.S.C. § 1252(a)(2)(D) "shall take effect upon the date of the enactment" and shall apply to any case "in which the final administrative order of removal . . . was issued before, on, or after the date of the enactment").

### III. Withholding of Removal and CAT Relief[2]

When, as here, the BIA affirms the IJ's conclusion but issues its own reasoning, we review the BIA's decision, "except to the extent that [the BIA] expressly adopts the IJ's opinion." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004) (quotation omitted). "Insofar as the [BIA] adopts the IJ's reasoning, we review the IJ's decision as well." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In conducting our review, we apply the substantial evidence test to the BIA's and IJ's factual determinations. Id. at 1283. Under this test, which is "highly deferential," we "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1284 (quotation omitted). In order to reverse, "we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An applicant for withholding of removal and CAT relief is not subject to the one-year time limitation placed on asylum applicants under INA § 208(a)(2)(B). See 8 C.F.R.§ 208.16(b), (c) (describing the standards for awarding withholding of

---

[2] The government argues on appeal that Reynoso abandoned his withholding-of-removal and/or CAT-relief challenges by failing to raise arguments to this effect in his brief. However, Reynoso clearly argued in his brief that he established his eligibility for withholding of removal and CAT relief, such that he did not abandon these issues, and we will address them.

removal and CAT relief and not mentioning a one-year, or other, deadline for seeking such relief).

An alien seeking withholding of removal under the INA must show that it is more likely than not that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.16(b). We have held that this list of protected grounds also encompasses an "imputed political opinion," or a political opinion falsely attributed to the alien by his persecutors. Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004). The alien can satisfy this burden by demonstrating that he suffered past persecution on account of a protected ground, which gives rise to a rebuttable presumption that his life or freedom would be threatened in the future if he were to return. 8 C.F.R. § 208.16(b)(1). We have held, however, that "an alien cannot demonstrate that [he] more-likely-than-not would be persecuted on a protected ground if the [IJ and/or BIA] finds that the alien could avoid a future threat by relocating to another part of [his] country." Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006). Also, an alien's allegations of a future threat are less persuasive if the alien's family remains in his country without incident. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006).

Furthermore, while the INA does not expressly define "persecution," we have recognized that it is "an extreme concept, requiring more than a few isolated

7

incidents of verbal harassment or intimidation, and that [m]ere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted) (finding that "menacing" telephone calls and threats to the alien and her brother did not constitute past persecution). We specifically have held that "employment discrimination" on account of an alien's political opinion, "which stops short of depriving an individual of a means of earning a living[,] does not constitute persecution." Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001). We likewise have held that "evidence that either is consistent with acts of private violence . . . , or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." Ruiz, 440 F.3d at 1258.

An alien seeking CAT relief must show that it is more likely than not that he would be tortured if returned to the proposed country of removal. Reyes-Sanchez, 369 F.3d at 1242. The alien also must demonstrate that the feared torture would be by the government or with the government's awareness and failure to intervene. Id. The CAT defines torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of

8

or with the consent or acquiescence of a public official or other person acting in an official capacity.

See 8 C.F.R. § 208.18(a)(1). To constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. 8 C.F.R. § 208.18(a)(5).

Substantial evidence supports the IJ's and BIA's denial of withholding of removal. See Al Najjar, 257 F.3d at 1284. The record does not compel a finding that it is more likely than not that Reynoso will suffer future persecution. See 8 C.F.R. § 208.16(b). First, nothing that he experienced in the past, namely, threatening telephone calls, a home burglary, and a demotion, rose to the level of persecution. There is nothing to suggest that the telephone calls were anything beyond mere harassment. See Sepulveda, 401 F.3d at 1231. Also, the limited details provided by Reynoso regarding the home burglary suggest that it merely was a criminal act not related to Reynoso's imputed political opinion, as the burglars stole two television sets. See Ruiz, 440 F.3d at 1258. Likewise, the limited details provided by Reynoso regarding his demotion suggest that it merely was, at most, an act of employment discrimination that did not strip him of his ability to earn a living. See Barreto-Claro, 275 F.3d at 1340.

Similarly, nothing demonstrates that Reynoso's alleged attackers still will be interested in him if he were returned to Peru. Indeed, Reynoso no longer holds the

9

auditor position and more than four years had passed since he left Peru when he appealed the BIA's denial of relief. Also, Reynoso has offered no evidence that his alleged persecutors are still seeking to cause him harm and actually testified that his daughters and mother remain in Peru without harm. See Ruiz, 440 F.3d at 1259. Furthermore, the fact that his alleged persecutors harassed him for several years without any attempts to make good on their threats or cause him physical harm indicates they never intended to physically harm or torture him. Therefore, Reynoso has not established that it is more likely than not that he would be harmed if returned to Peru. See 8 C.F.R. § 208.16(b).

Substantial evidence also supports the IJ's and BIA's denial of CAT relief. See Al Najjar, 257 F.3d at 1284. The record does not compel a finding that it is more likely than not that Reynoso will suffer torture if returned to Peru. See Reyes-Sanchez, 369 F.3d at 1242; Mendoza, 327 F.3d at 1287. For the same reasons that Reynoso has not demonstrated that his alleged persecutors still will be seeking to harm him if he were returned to Peru, he also has not demonstrated that these people, or others, will seek to inflict the sort of pain and suffering that constitutes torture if he were returned to Peru. See 8 C.F.R. § 208.18(a)(1), (5). Therefore, Reynoso has not established that it is more likely than not that he will suffer torture if returned to Peru. See Reyes-Sanchez, 369 F.3d at 1242.

Accordingly, because Reynoso has not demonstrated eligibility for withholding of removal or CAT relief, we deny his petition in this respect.

**PETITION DISMISSED IN PART, DENIED IN PART.**