

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-4-2004

# Wongso v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1468

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Wongso v. Atty Gen USA" (2004). *2004 Decisions.* Paper 1027.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1027

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 03-1468


ADI WINATA WONGSO,
Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL,
IMMIGRATION AND NATURALIZATION SERVICE,
Respondent


On Petition for Review of an Order of the Board of Immigration Appeals
No. A79-316-241


Submitted Pursuant to Third Circuit LAR 34.1(a)
January 27, 2004

BEFORE:  NYGAARD, FUENTES and STAPLETON, Circuit Judges

(Opinion Filed February 4, 2004)


OPINION OF THE COURT

STAPLETON, <u>Circuit Judge</u>:

Petitioner Adi Winata Wongso seeks review of an Immigration Judge's decision denying asylum, withholding of removal, and relief under the Convention Against Torture ("Convention"), and finding that Petitioner had filed a frivolous application for asylum. That decision was summarily affirmed by the Board of Immigration Appeals ("BIA"). Petitioner also seeks review of the BIA's decision to summarily affirm without opinion the order of the Immigration Judge ("IJ"). We determine that we are without jurisdiction to review Petitioner's asylum claim. With respect to the merits of Petitioner's requests for withholding of removal and relief under the Convention Against Torture, we conclude that the immigration judge's adverse credibility determination was supported by substantial evidence and that Wongso did not meet his burden in demonstrating eligibility for either of these forms of relief. We reject Petitioner's argument with regard to the BIA's summary affirmance procedure in light of this Court's recent *en banc* decision in *Dia v. Ashcroft*, 352 F.3d 228 (3d Cir. 2003). With respect to the IJ's determination that Petitioner filed a frivolous application for asylum, however, we will grant the petition for review and remand because the IJ failed to make the findings necessary to reach such a determination under the relevant statute and implementing regulation.

The parties are familiar with the facts and procedural history. Hence, we limit ourselves to a brief statement of the reasons for our decision.

2

I.

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). *See Mulanga v. Ashcroft*, 349 F.3d 123, 131 (3d Cir. 2003). "[W]hen the BIA issues an [affirmance without opinion ("AWO")] under the streamlining regulations, we review the IJ's opinion and scrutinize its reasoning." *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (*en banc*). The IJ's adverse credibility determination and findings of fact with respect to Petitioner's withholding of removal and Convention claims must be reviewed under the substantial evidence standard. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003). "We will not disturb the IJ's credibility determination and findings of fact if they are 'supported by reasonable, substantial and probative evidence on the record considered as a whole.'" *Id.* (quoting *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir.1998)) (internal quotation marks and citation omitted). Under the substantial evidence standard, a petitioner "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find" otherwise. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

II.

An alien must prove by clear and convincing evidence that he or she filed an asylum application "within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). However, if the alien can establish the "existence of changed circumstances which materially affect the applicant's eligibility for asylum" or

3

"extraordinary circumstances relating to the delay in filing an application," 8 U.S.C. § 1158(a)(2)(D), failure to file a timely application may be excused. Petitioner admits that he first entered the United States on April 24, 1998 from Indonesia and that he did not file his application for asylum until March 15, 2001. Petitioner argues, however, that he demonstrated to the IJ that there had been changed circumstances that materially affected his asylum application because conditions in Indonesia were worsening at an "ever-increasing rate" after he left in 1998.

We are without jurisdiction to hear a challenge to the IJ's determination that Petitioner did not file a timely asylum application under 8 U.S.C. § 1158(a)(2)(B) and did not qualify for relief under 8 U.S.C. § 1158(a)(2)(D). Section 208(a)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a)(3), provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph [(a)](2)," which includes the IJ's determination with respect to whether Petitioner's asylum application was timely and whether changed circumstances or extraordinary circumstances warrant waiving the one year time limitation for asylum applications. *See Tarrawally,* 338 F.3d at 185 ("[T]he language of 8 U.S.C. § 1158(a)(3) clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by extraordinary circumstances."). Accordingly, we may not consider Petitioner's argument that the untimeliness of his asylum application was excused under 8 U.S.C. §

4

1158(a)(2)(D).

In addition to finding that Petitioner had filed an untimely asylum application and that no relief was warranted under 8 U.S.C. § 1158(a)(2)(D), the IJ ruled in the alternative that, even assuming a timely application, Petitioner was not entitled to asylum on the merits of his application. Petitioner challenges this decision on the merits. Given that we lack jurisdiction to review the IJ's determination with respect to the timeliness of Petitioner's asylum application, we need not review the merits of whether Petitioner otherwise qualified for asylum.

III.

Petitioner casts his arguments with respect to past and future persecution solely in terms of his asylum claim. As we have indicated, Petitioner's asylum claim must fail because the IJ determined that it was not timely. Petitioner does not contest in his brief the IJ's determinations with respect to withholding of removal or relief under the Convention Against Torture. Petitioner has therefore waived any argument that the IJ erred with respect to those determinations. *See, e.g.*, *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 526 (3d Cir. 2003).

Even if there had been no waiver, we would still hold that the IJ's adverse credibility determination was supported substantial evidence and, therefore, that Petitioner has failed to meet his burden with respect to eligibility for withholding of removal. We would further hold that Petitioner had not demonstrated eligibility for relief

5

under the Convention.

A.

Withholding of removal is to be granted "if the Attorney General decides that the alien's life or freedom would be threatened in [the country of removal] because of the alien's race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The alien must establish by a 'clear probability' that his life or freedom would be threatened in the proposed country of deportation. A clear probability means 'more likely than not.'" *Tarrawally*, 338 F.3d at 186 (internal quotations and citations omitted).

The IJ found that Wongso did not qualify for withholding of removal because he was not credible and had presented no evidence suggesting that he had been persecuted because of his membership in a class protected under 8 U.S.C. § 1231(b)(3)(A). Wongso admits that there were "some differences" between his testimony in front of the IJ and statements that he had submitted in support of his application, but argues that these "differences were not numerous and not serious." Under the substantial evidence standard of review, we cannot agree.

In finding Wongso to be not credible, the IJ referred to several inconsistencies between Petitioner's testimony and written statements. We will briefly note some of the inconsistencies relied upon by the IJ that are material to any claim of persecution. The IJ recognized that Wongso testified in court as to an anti-Chinese

6

demonstration occurring in June of 1997 that resulted in damage to his business, but claimed in his affidavit that this incident occurred in November of 1997. Wongso's affidavit indicated that his wife's Buddhist temple in Surabaya had been burned, but he testified that a Buddhist temple in the town of Sumenep was destroyed and that nothing had happened to the temple in Surabaya. Wongso further testified that his sister-in-law's house had been burned during riots by native Indonesians, but his affidavit indicated that it was his sister's house.

The IJ also greatly relied on inconsistencies with regard to Wongso's claim that his own house(s) had been burned. Wongso first testified that his house was burned in December of 2000, but his affidavit indicated that his house in Banyuwangi had been burned in November of 2000. Petitioner then testified that, in addition to his house in Banyuwangi being burned, his house in Sumenep was also burned. Later, Petitioner contradicted this testimony by indicating that it was only his house in Banyuwangi that had been burned. Petitioner then contradicted that testimony by stating that nothing had ever happened to the Banyuwangi house. This statement was eventually retracted, and Petitioner indicated that the Bangyuwangi house had been burned in 2000.[1]

We must afford the IJ's adverse credibility determination substantial deference because "it is grounded in evidence in the record and . . . the IJ [has] provide[d]

_____

[1] The IJ noted other inconsistencies with respect to when Wongso was married and the dates during which he operated his own business.

specific cogent reasons for [his] determination." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003). The IJ identified specific contradictions between Wongso's written statements and testimony, and internal contradictions within Wongso's own testimony. The adverse credibility determination is therefore supported by substantial evidence. As Wongso has presented no evidence of persecution because of membership in a protected class under 8 U.S.C. § 1231(b)(3)(A), the IJ's decision to deny withholding of removal was proper.

B.

Under the Convention's implementing regulations, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.16(c)(2). The torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Evidence to be considered in determining whether it is more likely than not that an applicant will be tortured in the proposed country of removal includes: "(i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information

8

regarding conditions in the country of removal." 8 C.F.R. § 208.16(c)(3).

"[C]ountry conditions alone can play a decisive role in granting relief under the Convention." *Tarrawally*, 338 F.3d at 188 (quoting *Kamalthas v. INS*, 251 F.3d 1279, 1280 (9th Cir.2001)) (internal quotations omitted). "Accordingly, a decision-maker must review claims for relief under the Convention and consider relevant country conditions even where adverse credibility determinations have precluded relief under the INA." *Id.*

Wongso did not qualify for withholding of removal because the IJ found him to be not credible. Wongso did, however, present some evidence of human rights abuses in Indonesia by way of a State Department report. The IJ determined that Wongso could avoid any possibility of torture or persecution if he relocated to Surabaya, a part of Indonesia where Wongso's parents reside. Under 8 C.F.R. § 208.16(c)(3)(ii), the IJ must consider the ability of an applicant to relocate to another part of the country of removal where the applicant is not likely to face torture. Here, the IJ noted that Wongso's parents reside in Surabaya, and that Wongso had not presented evidence of any potential problems on Surabaya. Instead, Wongso testified that he did not want to go back and live with his parents on Surabaya "[b]ecause as a married man, I have to live separate from my parents" and "[f]or business reasons, it's just the best to live in Sumenep . . . not Surabaya." The IJ properly determined that Wongso's refusal to live in Surabaya with his parents was sufficient to preclude relief under the Convention.

IV.

9

Petitioner argues that he was denied Due Process rights under the United States Constitution because the BIA subjected him to its streamlining regulations and issued an affirmance without opinion of the IJ's decision. Petitioner claims that he is "entitled to a full and carefully considered review of the Immigration Judge's decision and . . . can not know whether his case was given such a review because the AWO procedure was used." This challenge is foreclosed by this Court's recent *en banc* decision in *Dia v. Ashcroft*, 353 F.3d 228, 238 (3d Cir. 2003) ("We agree with our sister courts of appeals that have passed on this issue and conclude that the streamlining regulations do not violate the Due Process Clause of the Constitution."). Under *Dia*, the Attorney General's implementation of the streamlining regulations and the BIA's issuance of an affirmance without opinion does not *per se* violate either the INA or the Constitution. We therefore conclude that Petitioner's argument with respect to the AWO process is foreclosed by *Dia*.

V.

The IJ found that Petitioner had filed a frivolous application for asylum based upon the contradictions between Wongso's testimony, affidavit, and asylum application. The IJ determined that Wongso was aware of the contents of his asylum application and affidavit, and nonetheless gave testimony that contradicted those documents. Petitioner argues that the standard for finding that a frivolous application has been filed is high, and that the differences between Wongso's testimony, affidavit, and

10

asylum application were not numerous or serious enough to warrant a finding by the IJ

that Wongso filed a frivolous application.

8 U.S.C. § 1158(d)(6), which was enacted as part of the Illegal Immigration

Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), provides:

> If the Attorney General determines that an alien has
> knowingly made a frivolous application for asylum and the
> alien has received the notice under paragraph (4)(A), the alien
> shall be permanently ineligible for any benefits under this
> chapter, effective as of the date of a final determination on
> such application.

*Id.*[2] As explained in the *Immigration Legislation Handbook*, this provision is "one of the

most extreme provisions in IIRIRA. The provision permanently bars the alien from

receiving any nonimmigrant or immigrant benefit once it is triggered. Moreover, the bar

may not be waived under any circumstances."  Austin T. Fragomen, Jr., et al.,

*Immigration Legislation Handbook* § 7:95 (database updated April 2003).  "The bar

covers any benefit under the INA, including immigrant or nonimmigrant entry."  *Id.* §

---

[2]  The Court of Appeals for the Eleventh Circuit has noted that this statute essentially refers to fraudulent, as opposed to frivolous, applications.

> Synonyms for frivolous are "carefree, fanciful, fickle, giddy, flippant, nonchalant." Roget, International Thesaurus (3d ed.1965). The dictionary defines frivolous as "insignificant, trivial, silly or gay." Webster, New International Dictionary (3d ed.1961). We note perhaps that the statute is improperly captioned as "Frivolous Application." A more appropriate caption perhaps would be "Fraudulent Application." Here we think that the record very clearly reflects that [Petitioner] was sincere, albeit fraudulent, in his application. He was not nonchalant or flip. Neither was it insignificant or trivial to him.

*Barreto-Claro v. U.S. Atty. Gen.*, 275 F.3d 1334, 1339 (11th Cir. 2001).

11

7:105.

8 C.F.R. § 208.20 sets forth the criteria an IJ or the BIA must address

before finding an application to be frivolous.

> [A]n applicant is subject to the provisions of section 208(d)(6)
> of the Act only if a final order by an immigration judge or the
> Board of Immigration Appeals specifically finds that the alien
> knowingly filed a frivolous asylum application. For purposes
> of this section, an asylum application is frivolous if any of its
> material elements is deliberately fabricated. Such finding shall
> only be made if the immigration judge or the Board is
> satisfied that the applicant, during the course of the
> proceedings, has had sufficient opportunity to account for any
> discrepancies or implausible aspects of the claim.

*Id.* ("implementing regulation").

After explaining various inconsistencies with Wongso's testimony,

affidavit, and asylum application in conjunction with finding Wongso not credible, the IJ

in this case concluded as follows with respect to the frivolous application statute:

> The Court finds that the Respondent has filed a
> frivolous application for asylum and this is based on the
> notorious number of contradictions between the Respondent's
> testimony and his affidavit and his I-589 application.
> Pursuant to the regulations, this Court must find that the
> Respondent was aware of the contents of both his asylum
> application and his affidavit and consequently, should not
> have given testimony today which contradicts those two
> documents to such a degree. The Court would be rather naive
> to believe that the Respondent was attempting to deceive this
> tribunal, was attempting to lie to the Court for any other
> reason other than to obtain a benefit under the Act, that is, for
> this Court to grant him asylum.

Appendix at 11-12.

12

The IJ thus found that there were contradictions between Wongso's testimony, affidavit, and asylum application. However, even assuming that the IJ believed all of the contradictions he noted (with respect to the adverse credibility determination) to be "material" for purposes of the frivolousness determination, the IJ did not make the specific findings required by § 208.20 as to which material statements *contained in Petitioner's asylum application* were *false*. There is, therefore, no finding to review as to whether Wongso filed an application containing material statements that were false.[3] Similarly, while the IJ found that Wongso was "aware of the contents of both his asylum application and his affidavit," he did not make the specific finding also required by § 208.20 that Wongso knew at the time of filing his application that a specific, material element of that application was false. The record does reveal, however, that Wongso was given ample opportunities to address the inconsistencies that the IJ would eventually base his frivolous application finding upon. *See Farah v. Ashcroft*, 348 F.3d 1153, 1158 (9th Cir. 2003) (frivolous application determination reversed where, for example, applicant not given opportunity to address discrepancies relied upon by IJ in

---

[3] Simply noting inconsistencies between testimony and an asylum application, while relevant to an adverse credibility determination, is not sufficient for a frivolous application finding. For an example of a finding that an application was filed containing a knowingly *false* material statement, see *Barreto-Claro v. U.S. Atty. Gen.*, 275 F.3d 1334, 1339 (11th Cir. 2001) (affirming a finding that petitioner's asylum application was frivolous where petitioner recanted answers to certain questions on his asylum application in his testimony in front of the IJ and merely tried to show *why* "concededly material fabrications were knowingly made").

13

reaching that determination).

The IJ in this case considered an adverse credibility determination to be coextensive with a finding of frivolousness, finding frivolousness solely because of "the notorious number of contradictions between the Respondent's testimony and his affidavit and his I-589 application." The IJ simply repeated his finding that Wongso's testimony suffered from inconsistencies in concluding that Wongso filed a frivolous application, without ever examining what specific material aspects of Wongso's *application* were knowingly *false*.

VI.

For the foregoing reasons, the petition for review will be granted only with respect to the IJ's frivolous application determination. We will vacate the BIA's order of January 28, 2003, affirming that determination, and remand this matter to that Board. The BIA will direct the IJ either to vacate his order finding that Petitioner filed a frivolous application, or to reenter that order after making the specific findings required by 8 C.F.R. § 208.20.

TO THE CLERK:

Please file the foregoing not precedential opinion.

/s/  Walter K. Stapleton
Circuit Judge

14