[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-13250
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 23, 2009
THOMAS K. KAHN
CLERK

Agency No. A79-441-324

LOUIS MARTIN DALBERISTE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 23, 2009)

Before BIRCH, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Louis Martin Dalberiste seeks review of the Board of Immigration Appeals'

("BIA") decision affirming the Immigration Judge's ("IJ") order denying his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, and Degrading Treatment or Punishment ("CAT"), INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(c).[1] Upon review, we DENY the petition.

## I. BACKGROUND

Dalberiste, a native and citizen of Haiti, arrived in the United States at West Palm Beach, Florida on or about 8 May 2002. See Administrative Record ("AR") at 212. The Department of Homeland Security ("DHS") served Dalberiste with a notice to appear ("NTA") on 9 May 2002, charging him with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. Id. at 212-13. On 23 January 2003, Dalberiste appeared before an IJ, admitted the allegations contained in the NTA, and conceded removability. Id. at 63, 66. That same day, Dalberiste filed an application for asylum and withholding of removal, alleging persecution on the basis of political opinion because he opposed the

---

[1] Dalberiste does not challenge the BIA's denial of CAT relief in his petition for review and thus has abandoned this issue. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

Fanmi Lavalas Party and then-president Jean-Bertrand Aristide. Id. at 78, 85-90, 102, 176, 180.[2]

In support of his application, Dalberiste filed a number of articles regarding conditions in Haiti. See id. at 126-175. These articles stated that journalists who opposed the Lavalas Party were subjected to severe harassment, including threatening telephone calls, assaults, beatings, illegal arrests, and even murder. Id. at 129-30. No incidents of direct censorship of journalists by the state were reported, however. Id. at 130. The record also included the 2005 U.S. State Department's Country Report on Human Rights Practices for Haiti ("2005 Country Report"), which noted that there were credible reports of arbitrary killings committed by the Lavalas Party as well as by street gangs, who were suspected of being paid and armed by President Aristide's supporters. Id. at 111. While Haitian law provided for freedom of speech and of the press, most journalists practiced some form of self-censorship, and there were several reports of high-profile journalists being threatened, attacked, and/or killed by the Haitian National Police, Aristide supporters, and other individuals. Id. at 118-19.

At his September 2006 removal hearing, Dalberiste testified that he had worked as an on-air journalist at a radio station in Saint Louis du Nord, Haiti, since

---

[2]According to Country Report, President Aristide was ousted from the presidency by an armed rebellion and left Haiti in 2004. Id. at 111, 116.

3

1999. He stopped working at the station following a 22 December 2001 broadcast during which he discussed a recent failed coup d'etat and spoke out against President Aristide and the Lavalas regime. Id. at 78, 85-90, 104. After Dalberiste made these remarks, a large crowd of Lavalas supporters, who were known to "crack down" on anyone who criticized the government, gathered outside the radio station and attempted to enter the station.[3] Id. at 90-93. Fearing that he would be beaten or killed, Dalberiste escaped and fled to an area called Gallon, where he remained for four months.[4] Id. at 92-94. Dalberiste learned from his mother, who visited him several times while he lived in Gallon, that on the night of the broadcast, members of the Lavalas crowd had come looking for him at her house. They "shook" and "jerked" her and threatened to "take her away" if she did not reveal his whereabouts. On occasion, unidentified persons would throw stones at her house. Id. at 96-98.

On cross-examination, Dalberiste stated that although Aristide was no longer in Haiti, Dalberiste would be in danger if he returned to Haiti because the Lavalas Party still existed. Id. at 102. He could not relocate to a different city because

---

[3]Dalberiste testified that he did not actually see the people assembled outside, but was told by another radio station employee that they were Lavalas supporters. See id. at 91-93.

[4] Although Dalberiste stated in his asylum application that the crowd destroyed the radio station after he had already escaped, see id. at 187, the IJ found that there was no evidence in the record to support this statement, see id. at 48, 51.

4

Haiti was a small country, and he would not able to hide because he would have to work in public. He had been able to live without incident in Gallon only because he remained in hiding while he lived there. Id. at 102-03. In response to the IJ's questioning, Dalberiste testified that individuals conducted surveillance on his mother's house in case he returned, but no one had attempted to enter the house as they had on the night of the radio station incident. Id. at 107. The only other adverse incident relating to his political beliefs that he experienced before the radio station incident occurred in 1995 when he was a student. According to Dalberiste, after he spoke out against the government, an "element" told him that "they would burn [him] out" if he returned to the country. Id. at 105-06.

The IJ denied Dalberiste's application for relief and ordered him removed to Haiti. Id. at 37. The IJ found that Dalberiste's testimony was generally credible, but that he had failed to meet the burden for asylum because, even assuming the truth of his testimony, the incident at the radio station, the event in 1995, and the harassment of Dalberiste's mother did not amount to past persecution. Id. at 49-52. The IJ further found that Dalberiste had not demonstrated a well-founded fear of future persecution because his notoriety as a political activist was not likely to have outlasted his four-year absence from Haiti, Aristide's regime had ended, and Dalberiste's family had remained unharmed. Id. at 53-54. The IJ noted that although Dalberiste had shown general conditions of

5

political violence, inhumane actions, and lack of security in Haiti, these general conditions did not qualify him for asylum. Id. at 54-55. Because Dalberiste failed to meet the lower burden of proof for asylum eligibility, his claims for withholding of removal and CAT relief also failed. Id. at 55.

Dalberiste appealed the IJ's decision to the BIA, arguing that he had established past persecution on account of his political opinion and that he had a well-founded fear of future persecution because conditions for journalists in Haiti were still dangerous and had not changed and because the Lavalas Party remained a viable and violent political force. Id. at 13, 19, 33-34. In any event, he asserted, he was entitled to a presumption of future persecution based on his having established past persecution. Id. at 19-20. The BIA affirmed, and Dalberiste now seeks review of the BIA's denial of relief.

## II. DISCUSSION

Because the BIA adopted the IJ's decision without opinion, we treat the IJ's decision as the final agency determination and review the IJ's analysis as if it were the BIA's. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review de novo the IJ's legal conclusions. See Hernandez v. U.S. Att'y Gen., 513 F.3d 1336, 1339 (11th Cir. 2008) (per curiam). Findings of fact are reviewed under the substantial evidence test, which requires us to affirm the IJ's decision "if it is supported by reasonable, substantial, and probative evidence on the record

6

considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation marks and citation omitted).

On appeal, Dalberiste argues that he showed past persecution because his life was threatened after he criticized President Aristide and the Lavalas regime during the 22 December 2001 radio broadcast. He contends that this entitled him to a presumption of future persecution and that the government has failed to rebut this presumption. He also argues that the 2005 Country Report, which stated that conditions for journalists in Haiti continued to be dangerous, demonstrated that it is more likely than not that he will be persecuted if returned to Haiti.

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1) (2008). The Attorney General or Secretary of Homeland Security has discretion to grant asylum if the alien satisfies his burden of establishing that he is a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is defined as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).

Thus, to establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. If the alien establishes past persecution, it is presumed that his life or freedom would be threatened upon return to the country of removal. The government can overcome this presumption by showing that the country's conditions have changed such that the applicant's life or freedom would no longer be threatened or that the alien could relocated within the country and it would be reasonable to expect him to do so. 8 C.F.R. §§ 208.13(b), 208.16(b).

An alien who has not shown past persecution may still be entitled to asylum if he can demonstrate a well-founded fear of future persecution on account of a statutorily listed factor. See Sepulveda, 401 F.3d at 1231; 8 C.F.R. § 208.13(b)(2). To prevail, the applicant's fear of persecution must be both "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.

We have repeatedly stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1226 (quotation marks, citation, and alteration omitted). The allegedly persecutory events to which Dalberiste testified amounted to no more than a

handful of isolated incidents of verbal intimidation. There is no evidence in the record that either Dalberiste or his mother was ever detained or physically injured during their encounters with the Lavalas Party supporters. The harassment Dalberiste suffered thus did not rise to the level of extremity required to show past persecution. See, e.g., Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006) (per curiam) (finding no persecution where asylum petitioner was detained by Chinese government for five days but suffered no injuries); Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001) (finding no persecution where petitioner lost his job and was forced to take menial work but was never physically harmed, arrested, or detained).[5]

We further conclude that Dalberiste failed to show a well-founded fear of future persecution because the record does not support a finding that Dalberiste was so famous a political activist that his notoriety with the Lavalas Party would survive his four-year absence from Haiti. See Sepulveda, 401 F.3d at 1231-32 (holding that the petitioner did not demonstrate a well-founded fear of future persecution where the evidence did not indicate that her notoriety as an activist

_____

[5]Dalberiste argues in his petition for review, and argued in his brief to the BIA, that the IJ erred in finding that there was no nexus between his on-air political statements and the arrival of the angry mob at the station. Although the IJ did not explicitly make such a finding, we note that, even assuming a connection between the crowd and Dalberiste's statements, this incident still did not amount to persecution, especially given the lack of any evidence that anyone was actually injured or physically harmed.

9

would outlast her four-year absence from Colombia). Moreover, as Dalberiste noted at his hearing, Aristide was no longer in power in Haiti, and his family continued to live peacefully in Haiti. Dalberiste thus failed to show specific, detailed facts demonstrating that he had a good reason to fear being singled out for future persecution. See Al-Najjar, 257 F.3d at 1287; 8 C.F.R. §§ 208.13(b)(2), 208.16(b)(2).

Inasmuch as the record does not compel a finding that Dalberiste suffered past persecution or has a well-founded fear of persecution on account of a protected ground, he cannot satisfy the more stringent standard applicable to a claim for withholding of removal or CAT relief. See Forgue, 401 F.3d at 1288 n.4 (noting that where petitioner fails to establish claim of asylum on merits, his claims for withholding of removal and CAT relief necessarily fail).

## III. CONCLUSION

Dalberiste seeks review of the BIA's denial of asylum and withholding of removal. Because the evidence does not compel a finding that Dalberiste suffered past persecution or has a well-founded fear of future persecution on account of his political opinion or any other protected ground, we DENY the petition.

**PETITION DENIED.**

10