[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10237
Non-Argument Calendar
_____

Agency No. A055-081-375

MIRGIYAS USMANOV,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 18, 2014)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Mirgiyas Usmanov, a citizen of Uzbekistan, seeks review of the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of his application for asylum based on his fear of future persecution. Usmanov claims that if he is removed to Uzbekistan, he fears he will be targeted for close surveillance and possible arrest and prosecution on account of an imputed political opinion. The BIA concluded Usmanov is not entitled to asylum because he failed to show his fear of future persecution was objectively reasonable.[1] After review, we deny Usmanov's petition for review.

## I.  BACKGROUND FACTS

### A.    1994-2003 in Uzbekistan

In late 1994, Usmanov, while working for Uzbekistan's Ministry of Public Health, gave a television interview in which he criticized the government's healthcare programs. In January 1995, shortly after the television program aired, Usmanov was fired from his government position and summoned to a prosecutor's office. Usmanov was interrogated for two or three hours about his political views, threatened, hit twice in the face, which resulted in a bloody mouth and chipped tooth, and accused of being an enemy of the people. Afterward, the government

---

[1]Usmanov's application also sought asylum based on past persecution, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). Usmanov's briefs filed in this Court do not challenge the denial of those claims, and thus Usmanov has abandoned them. See Cole v. U.S. Att'y Gen., 712 F.3d 517, 530 (11th Cir.), cert. denied, 134 S. Ct. 158 (2013) (explaining that to adequately raise an issue, the party must "specifically and clearly identif[y] it in its opening brief; otherwise the claim will be deemed abandoned and its merits will not be addressed" (quotation marks omitted)).

prevented Usmanov from working in the medical profession. Instead, Usmanov had to work for trading and construction companies to support his family.

After his interrogation, Usmanov was followed and received unannounced visits at his home by the police and "the mahalla," which are neighborhood committees used by the Uzbek government to closely monitor and control the community. During the visits, members of the mahalla asked Usmanov questions about how he supported himself financially, but did not harm or threaten him. The visits became less frequent as time passed, occurring about once a month. The surveillance and visits continued until 2003, when Usmanov obtained an immigrant visa and left for the United States with his family.

## B.    2005 Return to Uzbekistan

In 2005, Usmanov returned to Uzbekistan for two and a half months to renew his passport and to obtain a passport for his oldest daughter. During this trip, Usmanov encountered the mahalla five times. The mahalla questioned him about how he made money in the United States and whether he planned to stay in Uzbekistan, but the mahalla did not harm or threaten him. Usmanov's passport renewal was delayed until he paid a bribe.

## C.    2008 Conviction in the United States

In 2008, Usmanov was convicted in Florida state court of grand theft by a hotel employee, in violation of Florida Statutes § 509.162(4)-1791. As a result, at

3

a February 2011 removal hearing, the IJ found that Usmanov was removable under

Immigration and Nationality Act § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i),

for having been convicted of a crime involving moral turpitude. [2]

### D.    2011 Application for Asylum

In July 2011, Usmanov filed his asylum application.  With respect to future

persecution, Usmanov claimed that if he were removed to Uzbekistan, the mahalla

would view him with suspicion and target him for increased scrutiny, and possibly

arrest, interrogate, physically abuse, and prosecute him, because he has spent eight

years in the United States and had criticized the Uzbek government in the 1994

television interview.  Usmanov's application stated that due to the unstable

relationship between the United States and Uzbekistan, Usmanov feared that

Uzbek officials and the mahalla would "interpret [his] association with the United

States as a sign of political disloyalty to the Uzbekistan government . . . ."

After a March 2012 asylum hearing, the IJ found Usmanov credible, but

denied all requested relief.  As to his future persecution claim, the IJ concluded,

inter alia, that Usmanov failed to show he had an objectively reasonable fear of

persecution.  On appeal, the BIA agreed, concluding that the IJ had not erred in

finding that: (1) Usmanov did not carry his burden to show an objectively

reasonable fear of future persecution; (2) the surveillance and questioning by the

---

[2]In his petition for review, Usmanov does not challenge the IJ's determination that he is removable.

Mahalla that Usmanov fears does not rise to the level of persecution; and (3)

Usmanov's fear of possible future arrest is based on speculation.[3]

## II.  DISCUSSION

To establish a well-founded fear of future persecution, an asylum applicant

must show that there is a "reasonable possibility" of suffering persecution if he

returns to his home country.  Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th

Cir. 2007) (quotation marks and emphasis omitted).  The fear of persecution must

be "subjectively genuine and objectively reasonable."  Al Najjar v. Ashcroft, 257

F.3d 1262, 1289 (11th Cir. 2001).  "In most cases, the objective prong can be

fulfilled either by establishing past persecution or that he or she has a good reason

to fear future persecution."  Id.  (quotation marks omitted).  The alien must present

"specific, detailed facts showing a good reason to fear that he or she will be singled

out for persecution on account of [the statutorily protected factor]."  Forgue v. U.S.

Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation marks omitted).[4]

In this case, substantial evidence supports the IJ's and the BIA's

determination that Usmanov failed to establish asylum eligibility because he did

---

[3]In affirming the IJ, the BIA issued its own decision, but explicitly agreed with several of the IJ's future-persecution findings.  Accordingly, we review the decisions of both the IJ and the BIA as to those findings.  See Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010).

[4]"We review a factual determination that an alien does not have a well-founded fear of persecution under the substantial evidence test."  Shi v. U.S. Att'y Gen., 707 F.3d 1231, 1234 (11th Cir. 2013).  "Under this standard, reversal requires finding that the record not only supports reversal, but compels it."  Id. (quotation marks omitted).

not show that his fear of persecution was objectively reasonable.  Although Usmanov was physically assaulted during his 2- to 3-hour interrogation in 1995, Usmanov afterward remained in Uzbekistan unharmed for eight years before immigrating to the United States in 2003.  During that time, Usmanov was visited and questioned by the mahalla on numerous occasions, although the frequency of their visits dwindled as time passed.  During their visits, the mahalla inquired into how Usmanov was doing, how he was supporting his family, and where he was getting money.

When Usmanov returned to Uzbekistan in 2005, the mahalla also visited him several times and asked him similar questions, but did not harm or threaten him.  The only other inconvenience Usmanov experienced during his 2005 visit was a delay in receiving his passport, for which Usmanov paid a bribe to expedite the passport process.

While the questioning and surveillance by the mahalla that Usmanov fears may be harassing, mere harassment and intimidation and even brief detentions do not amount persecution.  See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1353 (11th Cir. 2009); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005).  Furthermore, the fact that Usmanov remained in Uzbekistan unharmed for eight years after his interview and interrogation and later returned to Uzbekistan

6

for over two months without harm indicates that, to the extent Usmanov fears more than mere harassment and intimidation, his fear is not objectively reasonable.

Although Usmanov fears the police might plant drugs on him in order to arrest him, he did not present any evidence of a reasonable possibility that he would be singled out for such treatment. Usmanov relies on the fact that the Uzbeck police routinely and arbitrarily arrest citizens to extort bribes and the fact that Usmanov will be viewed with suspicion. However, Usmanov lived in Uzbekistan for eight years and returned to Uzbekistan in 2005 without ever being arrested by the police. Moreover Usmanov testified that the motivation to arrest him would be to extort money from him because the police would assume he was wealthy, having lived in a foreign country, not because of any imputed political opinion. Being targeted for extortion does not constitute persecution on account of political opinion. See Rivera v. U.S. Att'y Gen., 487 F.3d 815, 821-23 (11th Cir. 2007) (involving a wealthy family's refusal to pay a guerilla group's war tax).

Usmanov argues that the BIA failed to consider the nature of Uzbekistan's mahalla system, as reflected in the 2011 State Department Report on Human Rights Practices in Uzbekistan ("Country Report") and the testimony of Usmanov's expert witness, Dr. Shaul Gabbay. Usmanov argues that his evidence established that the mahalla are the "key enforcement component of a totalitarian regime," controlling the provision of social services and functioning as a link

7

between the local community, the government, and law enforcement.  Regardless of how the BIA characterized the mahalla, the fact remains that the mahalla's monitoring of Usmanov, while intimidating and harassing, does not amount to persecution.  The general country conditions, and the role of the mahalla system in controlling and monitoring the Uzbek people, described by the Country Report and Dr. Gabbay do not compel a conclusion that Usmanov would be singled out for treatment that amounts to persecution.  Further, Dr. Gabbay's testimony that conditions in Uzbekistan have worsened and that people would remember Usmanov's 1994 television interview do not compel a finding that Usmanov's fear of being singled out for persecution is objectively reasonable.

Finally, the record belies Usmanov's claim that the BIA failed to consider future economic persecution related to the Uzbek government's preventing him from working in the medical profession.  The BIA explicitly cited the fact that Usmanov's wife, Gulchekhra Usmanova, testified that Usmanov made more money when employed outside of the medical field as support for the IJ's finding that Usmanov would not experience economic persecution.  See In re T-Z-, 24 I. & N. Dec. 163, 173-74 (BIA 2007) (stating that economic sanctions that "reduce an applicant to an impoverished existence" may amount to persecution).  Specifically, Gulchekhra testified that her husband made $30 to $40 a month when working as a doctor, but made $50 to $80 a month when working in sales.  Moreover, Usmanov

testified that he was employed more or less constantly throughout the eight years he remained in Uzbekistan, including several brief stints as a doctor. See Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001) ("[E]mployment discrimination which stops short of depriving an individual of a means of earning a living does not constitute persecution.").

Usmanov stresses that he would need to apply to his local mahalla for social services. Even assuming the mahalla would not approve Usmanov's application for aid, Usmanov has not provided the contextual information needed to carry his burden to show the feared deprivation of social services would amount to economic persecution. See Mu Ying Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1156-57 (11th Cir. 2014) (concluding that an applicant did not show that having to pay for denied social benefits of medical care and education rose to the level of economic persecution); In re T-Z-, 24 I. & N. Dec. at 173-75 (explaining that the alien's net worth, other sources of income, and the conditions in the local economy must be considered in evaluating whether economic sanctions amount to persecution).

For all these reasons, substantial evidence supports the BIA's finding that Usmanov did not have a well-founded fear of persecution in Uzbekistan.

**PETITION DENIED.**

9